

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re: | |
|---|---|
| | 2011 TSPR 5 1 |
| Hon. Carmen H. Pagani Padró<br>Jueza Superior<br>Tribunal de Primera Instancia<br>Sala de San Juan | 181 DPR ____ |

Número del Caso: AD - 2009 - 1

Fecha: 5 de abril de 2011

Oficina de Administración de los Tribunales:

Lcda. Julia María Badillo Lozano
Lcda. María Victoria López Menéndez

Abogada de la Querellada:

Lcdo. Virgilio Ramos Gonzalez
Lcda. Carmen I. Hernández Rosich
Lcdo. Eric Pagani Padró
Lcda. Vanessa G arcía Rivera

Materia: Conducta Profesional

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribució n electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUANL SUPREMO DE PUERTO RICO

In re:

Hon. Carmen H. Pagani Padró
Jueza Superior
Tribunal de Primera Instancia                    Conducta
Sala de San Juan                    AD-2009-1    Profesional

*PER CURIAM*

En San Juan, Puerto Rico, a 5 de abril de 2011.

En el día de hoy nos corresponde determinar si procede la imposición de sanciones disciplinarias contra un juez o jueza por demorarse en dictar Sentencia en un caso sometido ante su consideración.

Veamos los hechos que dieron génesis a la controversia en el caso de autos.

**I**

El 12 de marzo de 2008, los señores María E. Rodríguez Casillas, Mariexy Pagán Rodríguez, Ángel A. Pagán Ramos, Ana H. García Santana y René Pagán García, en adelante conjuntamente como los quejosos, presentaron una Queja juramentada contra la Hon. Carmen H. Pagani Padró por su proceder en el caso

*María Rodríguez Casillas y otros v. Universidad de Puerto Rico y otros*, Civil Núm. FDP-90-0309.

Según consta del expediente, este último caso se inició el 18 de junio de 1990 cuando los quejosos y otros demandantes instaron una Demanda en daños y perjuicios en el Tribunal de Primera Instancia, Sala Superior de Carolina, contra el Estado Libre Asociado de Puerto Rico, la Universidad de Puerto Rico, la Administración de Servicios Médicos de Puerto Rico, el Hospital San Carlos y otros demandados. En dicho petitorio, los demandantes alegaron que hubo impericia en el tratamiento médico que se le brindó al occiso Elexsy A. Pagán García luego de que éste sufriera múltiples traumas como consecuencia de un accidente automovilístico.

Luego de varios incidentes procesales, se celebró el juicio del caso ante la Hon. Carmen H. Pagani Padró.[1] Éste se llevo cabo de forma fragmentada desde el 25 de octubre de 1993 hasta el 10 de octubre de 1996, y se extendió por un período de más de treinta (30) días.

Según surge del expediente, la prueba documental y testifical presentada durante el juicio fue voluminosa. Comparecieron a testificar un total de trece (13) peritos médicos, dieciocho (18) galenos que brindaron tratamiento médico al occiso y/o que testificaron sobre el

---

[1] Antes de que el caso fuese asignado a la Hon. Carmen H. Pagani Padró, dos (2) jueces ya habían intervenido en otras etapas del pleito.

funcionamiento de las facilidades hospitalarias en las que éste fue atendido, y diecisiete (17) testigos adicionales.

Luego de que concluyera el desfile de prueba, las partes se reunieron en cámara con la Hon. Carmen H. Pagani Padró. Esta última les solicitó a las partes que sometieran cada una un Memorando de Determinaciones de Hechos el cual posteriormente presentaron. Así las cosas, el 6 de marzo de 1997, el caso *María Rodríguez Casillas y otros v. Universidad de Puerto Rico y otros*, *supra*, quedó sometido en espera de que se dictara Sentencia.

Mientras tanto, el 9 de abril de 1997, la Hon. Carmen H. Pagani Padró fue notificada que sería trasladada a la Región Judicial de San Juan. Ante esta situación, la Jueza Pagani Padró notificó al Juez Administrador del Centro Judicial de Carolina una lista de los casos sometidos que llevaría consigo a la Región de San Juan.

Inicialmente, por instrucciones de la Jueza Pagani Padró, el expediente del caso *María Rodríguez Casillas y otros v. Universidad de Puerto Rico y otros*, *supra*, permaneció bajo la custodia de la Secretaría del Centro Judicial de Carolina debido a lo voluminoso que era. Sin embargo, el 14 de junio de 2000, dicho legajo fue trasladado a la Región de San Juan según lo ordenara la Jueza Maritza Ramos Mercado, Jueza Administradora Interina del Centro Judicial de Carolina.

Posteriormente, el 19 de septiembre de 2005, la parte demandante presentó un escrito intitulado "Moción

Informativa" en el que solicitaba que el caso *María Rodríguez Casillas y otros v. Universidad de Puerto Rico y otros*, *supra*, fuese resuelto lo antes posible.

Por su parte, la Jueza Pagani Padró celebró dos (2) vistas con relación al mencionado caso, una el 27 de junio y otra el 19 de julio de 2006, con el propósito de que las partes auscultaran la posibilidad de llegar a un Acuerdo Transaccional. No obstante, dicha transacción nunca se logró.

Ante el tiempo transcurrido, el 23 de febrero de 2007, la parte demandante presentó nuevamente una moción solicitando la pronta resolución del caso.

Finalmente, luego de varios incidentes procesales, el 4 de mayo de 2007 se dictó Sentencia en la que se ordenó la desestimación de la Demanda.

Ante esta situación, el 12 de marzo de 2008 los quejosos instaron una Queja ante la Oficina de Administración de Tribunales contra la Hon. Carmen H. Pagani Padró. Adujeron que la Jueza faltó a su deber de impartir justicia con prontitud y eficacia al tardarse más de diez (10) años en dictar Sentencia en el mencionado caso.

Luego de haber realizado una investigación sobre lo alegado, el 16 de marzo de 2009 la Directora Administrativa de los Tribunales presentó un Informe de Investigación ante la Comisión de Disciplina Judicial. En dicho escrito se indicó que la dilación de la Jueza en dictar Sentencia en el caso *María Rodríguez Casillas y otros v. Universidad de*

*Puerto Rico y otros*, *supra*, constituyó una violación a su obligación de adjudicar las controversias ante su consideración de forma diligente.

Después de haber evaluado el Informe anterior, la Comisión de Disciplina Judicial determinó que existía causa suficiente para creer que hubo posibles violaciones a los Cánones 4, 8, 12 y 17 de Ética Judicial, 4 L.P.R.A. Ap. IV-B, y a la Regla 24(a) de las Reglas para la Administración del Tribunal de Primera Instancia de Puerto Rico, 4 L.P.R.A. Ap. II-B; y ordenó la presentación de la Querella correspondiente. En consecuencia, el 4 de mayo de 2009, la Directora Administrativa de los Tribunales presentó una Querella contra la Hon. Carmen H. Pagani Padró ante la Comisión de Disciplina Judicial por alegada violación a dichas disposiciones legales.

Por su parte, el 22 de junio de 2009 la Jueza Pagani Padró presentó su Contestación a la Querella. Admitió que había tardado más de lo usual en resolver el mencionado caso. Sin embargo, señaló que existían varias circunstancias que justificaban la demora. Adujo que el caso *María Rodríguez Casillas y otros v. Universidad de Puerto Rico y otros*, *supra*, ameritaba mucho tiempo de análisis antes de que se dictara la Sentencia debido a la voluminosa prueba documental y testifical que se presentó, y a la complejidad de los aspectos técnicos que involucraba el pleito. También arguyó que parte de la dilación se debió a que las partes estuvieron dialogando con el propósito de alcanzar un

Acuerdo Transaccional por lo que se encontraba a la expectativa de lo que éstas acordaran.

Por otro lado, la Jueza Pagani Padró sostuvo que la demora en dictar Sentencia en el mencionado caso era una excepción a la forma en que ella desempeñaba sus labores ya que ésta, a pesar del alto volumen de casos que tenía asignados, alegadamente siempre se mantuvo resolviendo mensualmente igual o mayor cantidad de pleitos que sus compañeros jueces. Además, indicó que la Comisión de Evaluación Judicial llevó a cabo un Informe sobre la labor de la Hon. Carmen H. Pagani Padró durante sus diecisiete (17) años en la judicatura en el cual se calificó a la Jueza "en un nivel 5 de ejecución, lo cual implica[ba] que sus ejecutorias sobrepasa[ban] por mucho lo esperado y contribu[ían] a proyectar un alto nivel de calidad".[2]

La vista en su fondo se llevó a cabo el 13 de octubre de 2009. Al comienzo de ésta, las partes presentaron una Propuesta Transaccional.

Entre las estipulaciones que se incluyeron en este Acuerdo, se convino que la Directora Administrativa de los Tribunales retiraría el cargo por violación al Canon 12 de Ética Judicial, *supra*. Además, se indicó que la querellante reconocía la dedicación y el compromiso de la Jueza en el desempeño de sus funciones judiciales.

Por otro lado, la Hon. Carmen H. Pagani Padró aceptó que el caso *María Rodríguez Casillas y otros v. Universidad*

---

[2] Informe Final de Evaluación Judicial de la Hon. Carmen H. Pagani Padró preparado por la Comisión de Evaluación Judicial, pág. 2.

*de Puerto Rico y otros*, *supra*, no era un ejemplo de la forma en que debía llevar a cabo sus labores como jueza y que se trataba de una situación que no debía repetirse. Indicó que el término de diez (10) años en dictar Sentencia no era uno razonable; pero que las circunstancias del caso justificaban la tardanza. Además, reconoció la importancia de que los jueces y juezas resolvieran los casos con prontitud, y de que utilizaran todos aquellos recursos de la Oficina de Administración de los Tribunales que fuesen necesarios.

Luego de haber examinado la Propuesta Transaccional, las estipulaciones de hecho y la prueba documental sometida por las partes, la Comisión de Disciplina Judicial emitió su Informe el 24 de diciembre de 2009. Concluyó que la Hon. Carmen H. Pagani Padró no había incurrido en conducta que infringiera los Cánones de Ética Judicial, *supra*, ya que la demora en dictar Sentencia en el caso *María Rodríguez Casillas y otros v. Universidad de Puerto Rico y otros*, *supra*, constituía una situación aislada en su historial profesional. También señaló que el mencionado caso era uno atípico ya que resultó ser sumamente complejo por la abundante prueba documental y testifical que se presentó. Además, determinó que del expediente no surgía ninguna gestión administrativa dirigida a dar seguimiento a la resolución del caso luego de que éste fuera trasladado a la Región Judicial de San Juan.

A tales efectos, la Comisión de Disciplina Judicial recomendó la desestimación y el archivo de la Querella presentada contra la Jueza Pagani Padró.[3]

Inconforme, la Directora Administrativa de los Tribunales solicitó reconsideración. No obstante, ésta fue denegada.

Así las cosas, el caso quedó sometido ante nuestra consideración.

Luego de haber expuesto los hechos del presente caso, procedemos a analizar las normas de derecho aplicables.

## II

La Comisión de Disciplina Judicial es un organismo colegiado nombrado por este Tribunal para auxiliarle en el ejercicio de su responsabilidad en asuntos relacionados con la disciplina y el retiro involuntario de jueces o juezas. Véase, Art. 6.005 de la Ley Núm. 201 de 22 de agosto de 2003, según enmendada, conocida como Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003, 4 L.P.R.A. sec. 25m; Regla 12(a) de Disciplina Judicial, 4 L.P.R.A. Ap. XV-B. Como parte de sus funciones, la Comisión de Disciplina Judicial podrá considerar aquellas querellas en las que se haya determinado causa probable con respecto a cualquier juez o jueza por alegadamente haber incurrido en conducta que pueda conllevar la imposición de cualquier

---

[3] El Lcdo. Carlos E. Ramos González, Comisionado Asociado, emitió un Voto Explicativo en el cual concurre con la recomendación de la Comisión de Disciplina Judicial. Entiende que, aunque la dilación en dictar Sentencia podría constituir una violación ética, este caso es uno aislado en el historial profesional de la Hon. Carmen H. Pagani Padró y sería injusto imponerle sanciones ante su trayectoria judicial ejemplar.

sanción disciplinaria por violación a la ley, a los Cánones de Ética Judicial, al Código de Ética Profesional, y a las órdenes y normas administrativas aplicables. Véanse, Reglas 4(n) y 12(g) de Disciplina Judicial, *supra*. Asimismo, la Comisión de Disciplina Judicial realiza la función de aquilatar la prueba para formular determinaciones de hechos, conclusiones de derecho y recomendaciones en los procesos disciplinarios contra integrantes de la Judicatura. *In re Ruiz Rivera*, 168 D.P.R. 246, 253 (2006). Véase, Regla 12(g) de Disciplina Judicial, *supra*.

En el caso de autos, la Comisión de Disciplina Judicial tuvo la oportunidad de dilucidar la Querella presentada contra la Hon. Carmen H. Pagani Padró en la que se le imputó la violación a los Cánones 4, 8 y 17 de Ética Judicial, *supra*, y a la Regla 24 de las Reglas para la Administración del Tribunal de Primera Instancia de Puerto Rico, *supra*, por la tardanza en resolver el caso *María Rodríguez Casillas y otros v. Universidad de Puerto Rico y otros*, *supra*.

El Canon 8 de Ética Judicial, *supra*, dispone que los jueces deben ser laboriosos, prudentes, serenos e imparciales al llevar cabo sus labores; y deben enmarcar sus funciones adjudicativas en el estudio del derecho y en la diligencia orientada a descubrir los hechos esenciales de cada controversia. A su vez, el Canon 17 del citado cuerpo reglamentario exige que los jueces sean "diligentes en la administración del proceso judicial de los asuntos

sometidos ante su consideración y [procuren] que las partes también lo sean". 4 L.P.R.A. Ap. IV-B, C. 17. De igual forma, el Canon 4 de Ética Judicial, *supra*, dispone que los jueces tienen el deber de cumplir "cuidadosa y diligentemente las obligaciones administrativas que les imponen las leyes y los reglamentos aplicables a la Rama Judicial". 4 L.P.R.A. Ap. IV-B, C. 4.

Por otro lado, la Regla 24(a) de las Reglas para la Administración del Tribunal de Primera Instancia de Puerto Rico, *supra*, establecen que los jueces resolverán los casos contenciosos atendidos en sus méritos y las mociones de sentencia sumaria dentro de los noventa (90) días desde la fecha en que fueron sometidos para adjudicación. Sin embargo, dicho término puede extenderse razonablemente "cuando la naturaleza del asunto o alguna causa extraordinaria lo hagan necesario". 4 L.P.R.A. Ap. II-B, R. 24.

Como podemos ver, todas estas normas están encaminadas a garantizar que los jueces desempeñen sus funciones diligentemente, y que los asuntos ante los tribunales se resuelvan de forma rápida y eficaz. Tales preceptos legales son de medular importancia ya que en nuestro ordenamiento impera el principio rector de que las controversias ante los tribunales se resuelvan de manera justa, rápida y económica. Véanse, *Insular Highway v. A.I.I. Co*, res. el 9 de septiembre de 2008, 175 D.P.R.___

(2008), 2008 T.S.P.R. 153, 2008 J.T.S. 173; *Lluch v. España Service Sta.*, 117 D.P.R. 729, 751 (1986).

Empero, a pesar de que se fomenta la pronta resolución de las controversias ante nuestros foros judiciales, también es una realidad innegable que los jueces en nuestros tribunales tienen una carga pesada de trabajo debido al alto volumen de pleitos instados por los ciudadanos. Véase, D.M. Helfeld, *Seminario sobre la Demora Judicial: Artículo: El Seminario sobre la Demora Judicial: Diseño, Resultados y Recomendaciones*, 77 Rev. Jur. U.P.R. 891, 897-898 (2008). Como señala el Profesor Helfeld en el mencionado artículo: "[l]o que no se sabe, por falta de estudio sobre el asunto, es cual debe ser la carga de trabajo que les permita a los jueces cumplir sin incurrir en demora excesiva". *Íd.*, pág. 898. A esto debemos añadir que según el *National Center for State Courts* nuestros tribunales primarios no cuentan con suficientes recursos humanos para atender los casos que se presentan ante dichos foros.[4] C. J. Sagardía Abreu, *Seminario sobre la Demora*

---

[4] Estudio realizado por el *National Center for State Courts*, el cual finalizó en 2003. Véase, *Workload Assessmente Model for the Puerto Rico Superior Court*, Final Report, Court Services Division, Denver, 2003. Posteriormente, el *National Center for State Courts* publicó otro estudio en el 2008 en el que señaló que Puerto Rico tenía uno de los niveles de esclarecimiento de casos civiles más alto en Estados Unidos. Véase, Court Statistics Project, *Examining the Work of State Courts: An Analysis of 2008 State Court Caseloads*, (National Center for State Courts, 2010), pág. 29 (disponible en http://www.ncsconline.org/d_research/csp/2008_files/EWSC-2008-Online%20Version%20v2.pdf). Asimismo, concluyó que Puerto Rico es una de las jurisdicciones que por cada cien mil habitantes tiene más jueces (8.2) y donde menos casos se les asignaron a los jueces (726). *Íd.*, pág. 21.

Sin embargo, aunque podamos deducir de ese estudio que en Puerto Rico hay más jueces por habitantes que en otras jurisdicciones, que hay un nivel alto de esclarecimiento de casos civiles y que a los

*Judicial, Consideraciones Generales sobre la Demora Judicial en el Tribunal de Primera Instancia*, 77 Rev. Jur. U.P.R. 961, 992 (2008). Esto sin duda es un factor adicional que retrasa la adjudicación de las controversias que llegan ante la consideración de los jueces de instancia.

A su vez, no es un secreto la existencia de casos sumamente complejos que involucran multiplicidad de partes, un extenso descubrimiento de prueba, y controversias de hechos o de derecho complejas y técnicas. Véanse, *Amaro González v. First Fed. Savs.*, 132 D.P.R. 1042, 1055 esc. 15 (1993); *Vellón v. Squibb Mfg., Inc.*, 117 D.P.R. 838, 847 (1986). De ahí, que la manejabilidad de un caso puede complicarse por el grado de dificultad inmerso en éste, lo que a su vez puede producir una demora en el quehacer judicial.

Asimismo debemos señalar que, en nuestro ordenamiento, las partes afectadas por la demora tienen a su disposición diversos remedios legales para lograr que las controversias planteadas se resuelvan con prontitud. Si las partes consideran que ya ha transcurrido un término razonable sin que se haya dictado sentencia en determinado caso, pueden presentar mociones en las que alerten al

_____

jueces se le asignan menos casos que en otras jurisdicciones, eso no conlleva, necesariamente, que haya desaparecido el problema de falta de recursos humanos identificado en el estudio de 2003. Incluso, el hecho de que el estudio de 2003 contenga una referencia específica a la falta de recursos por parte de los jueces de instancia, mientras el estudio de 2008 guarda silencio sobre este asunto, es insuficiente para concluir que no exista relación entre esa carencia de recursos y la demora judicial.

tribunal sobre la tardanza y en las que le soliciten que resuelva su caso. Véase, R.H. Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 5ta ed., San Juan, P.R., LexisNexis, 2010, sec. 2501, pág. 264. Véase, además, Regla 8.4 de Procedimiento Civil, 32 L.P.R.A. Ap. V. Incluso, en casos extremos, podrían instar un recurso de *mandamus* para obligar al juez o jueza a que cumpla con su deber ministerial de resolver el caso sometido ante su consideración. Véanse, *Purcell Ahmed v. Pons. Nuñez*, 129 D.P.R. 711, 714 (1992); *Espina v. Calderón, Juez, y Sucn. Espina, Int.*, 75 D.P.R. 76, 81-82 (1953); *Pueblo v. La Costa, Jr.*, 59 D.P.R. 179, 188 (1941).[5] Véase, además, Art. 649 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 3421.

Como ya apuntamos, el Tribunal de Primera Instancia tiene el deber ineludible de garantizar que los procedimientos se ventilen sin demora, con miras a que se logre una justicia rápida y eficiente. *Heftler Const. Co. v. Tribunal Superior*, 103 D.P.R. 844, 846 (1975). Ahora bien, dicho deber tiene que ir acompañado de un mínimo de diligencia de las partes. Por eso, hemos señalado que le corresponde tanto al tribunal como a las partes velar que

---

[5] Como señalamos en el caso de *Pueblo v. La Costa Jr., Juez*, 59 D.P.R. 179, 188 (1941):

> puede recurrirse al *mandamus* adecuadamente y con frecuencia se recurre a dicho remedio para obligar a los tribunales a actuar cuando ellos rehúsan y deben hacerlo, pero no para indicarles o controlarles su discreción judicial; para obligar a una corte a oír y resolver cuando tiene jurisdicción, pero no para determinarle de antemano la decisión que deba emitir; para exigirles que procedan hasta dictar la sentencia, pero no para determinar y prescribir la que deba ser dictada.

los procedimientos en los tribunales se tramiten de forma justa, rápida y económica. *Bco. Des. Eco. v. AMC Surgery*, 157 D.P.R. 150, 157 (2002).

Lo anterior nos conduce a colegir que la mera dilación en dictar sentencia, no debe acarrear la violación de algún deber ético que sea objeto de sanciones. Es decir, el que un juez se demore en disponer de los casos ante su consideración, no amerita, por sí solo, que se acuda a la vía disciplinaria. Véase, *In re Alvino*, 494 A. 2d. 1014 (1985). Esto, porque entendemos que la dilación en cuestión podría deberse a factores exógenos a los jueces, como la sobrecarga de trabajo que puedan tener, la dificultad y complejidad de las controversias presentadas ante su consideración por las partes del caso y la inercia de las partes al no exigirle al juez que resuelva con prontitud su caso. En otras palabras, el atraso de los jueces no necesariamente responde a la incompetencia o abulia de estos.[6]

Lo que sí puede dar lugar a sanciones disciplinarias son las motivaciones indebidas y anti éticas que causen la demora en el trámite de uno o más casos. Por ejemplo, el que un juez demore el trámite del caso para beneficiar a alguna de las partes; o que postergue injustificadamente la disposición de un caso para

---

[6] Asimismo, entendemos que deben auscultarse otras posibles razones para dicha dilación, como el no contar con los recursos humanos suficientes para atender la carga de trabajo que tienen los jueces de primera instancia, y otros mecanismos para evitar esas dilaciones. Véase, *In re Alvino*, 494 A. 2d. 1014 (1985).

beneficiarse a sí mismo o algún tercero. Ahí, la sanción se deberá a esas motivaciones que constituyan una violación a los cánones y no a la demora *per se*.

Además, reconocemos que podría estar sujeto a una sanción disciplinaria, aquella dilación que esté relacionada razonablemente con un patrón de incompetencia manifiesta del juez en el desempeño de sus funciones judiciales. En estos casos, se podrá sancionar a un magistrado cuando las circunstancias demuestren que la demora judicial fue ocasionada por un comportamiento repetitivo que trasluzca una carencia mínima de diligencia en la disposición de los casos. Así, no basta con que exista una mera dilación. Será necesario ver el historial del juez al solucionar otros casos, de tal forma que se pueda colegir razonablemente que su tardanza en la adjudicación no corresponde a un hecho aislado, sino que es la consecuencia de su incompetencia para disponer con diligencia los casos que tiene o ha tenido ante su consideración. Véase, *In re Baber*, 847 S.W.2d 800, 803 (Missouri, 1993) ("Accordingly, when incompetency is alleged the Court´s task is to determine whether the conduct at issue establishes that the respondent lacks the requisite ability, knowledge, judgment, or diligence to consistently and capably discharge the duties of the office he or she holds"). Véase, además, *In re Hunter*, 823 So. 2d 325, 336 (Louisiana, 2002).

De esta manera, se logra un justo balance entre el interés de la ciudadanía en que sus causas de acción sean atendidas con diligencia por los jueces que las tienen ante su consideración y el interés en preservar las facultades discrecionales y la independencia judicial de estos últimos. En ese sentido, nos aseguramos de que cuando se vaya a sancionar disciplinariamente a un juez por la dilación en la adjudicación de los casos, medien razones de peso.

Conforme lo esbozado, somos de la opinión de que la demora de un juez en dictar sentencia en un caso, por sí sola, no conlleva la imposición de sanciones disciplinarias. La tardanza de un juez al disponer de un caso es un asunto inherentemente concatenado al trámite del caso. A su vez el trámite, a diferencia de las motivaciones indebidas que ocasionen una sanción disciplinaria y de la reiterada incompetencia manifiesta, es parte del ejercicio discrecional del juez como parte de su independencia de criterio.

Por eso, entendemos que sería impropio disciplinar a un miembro de la judicatura por la mera tardanza en la solución de un caso ante su consideración. Resolver lo contrario crearía un precedente peligroso que le otorgaría poderes ilimitados y omnímodos a la Oficina de Administración de Tribunales y a la Comisión de Disciplina Judicial para inmiscuirse en los asuntos discrecionales de los jueces que forman parte de nuestro

sistema judicial. Ello tendría el efecto de presionar indebidamente a los magistrados en su quehacer judicial.

Por lo tanto, en casos como el de autos, según el esquema reglamentario vigente, la queja que se presente no debe prosperar. Es decir, cuando la Oficina de Administración de los Tribunales le remita a la Comisión de Disciplina Judicial un informe de investigación sobre una queja que impute la falta de diligencia de un juez al resolver un caso, la Comisión deberá evaluar si el juez o jueza promovida ha incurrido en un patrón de incompetencia manifiesta o ha retrasado la adjudicación de un caso ante su consideración por motivaciones indebidas. Cuando ninguna de estas circunstancias esté presente, la Comisión no deberá ordenar la presentación de la Querella.[7]

Con este marco teórico, abordamos la controversia del caso de autos.

---

[7] Cualquier persona interesada con que se investigue la conducta de un juez o de una jueza puede presentar una queja ante la Oficina de Asuntos Legales de la Oficina de Administración de los Tribunales. Regla 5 de las Reglas de Disciplina Judicial, 4 L.P.R.A. Ap. XV-B. Si la queja cumple con los requisitos de forma de la Regla 5 de Disciplina Judicial, *supra*, la Oficina de Asuntos legales lo informará a la Directora o el Director Administrativo de Tribunales, quien determinará si procede el inicio de la investigación. Regla 6(c) de Disciplina Judicial, 4 L.P.R.A. Ap. XV-B. De así determinarlo, ordenará el inicio de la investigación a la Oficina de Asuntos Legales o a otra persona que designe. *Íd.* Si el informe de investigación expone conducta que amerite acción disciplinaria, la Directora o el Directora Administrativo lo remitirá a la Comisión de Disciplina Judicial. Regla 8(b) de Disciplina Judicial, 4 L.P.R.A. Ap. XV-B. Posteriormente, la Comisión de Disciplina Judicial deberá determinar si a la luz del informe de investigación, existe causa para presentar una querella contra la jueza o el juez promovido. Regla 12(g)(1) de las Reglas de Disciplina Judicial, 4 L.P.R.A. Ap. XV-B.

**III**

En primer lugar, es menester señalar que el caso *María Rodríguez Casillas y otros v. Universidad de Puerto Rico y otros*, *supra*, fue uno sumamente complicado y de difícil manejo. Éste contó con una extensa prueba documental; la vista en su fondo se extendió por más de treinta (30) días; y comparecieron cuarenta y ocho (48) testigos. Es decir, se trataba de un caso que debía ser atendido con detenimiento.

Segundo, la Hon. Carmen H. Pagani Padró realizó varios esfuerzos para lograr la pronta resolución del mencionado caso luego de que éste quedara sometido en espera de que se dictara Sentencia. La Jueza tomó la iniciativa de celebrar varias vistas con los abogados de las partes con el propósito de auscultar la posibilidad de una transacción y poder finalizar el pleito lo más pronto posible.

Por otro lado, según surge del expediente, no fue hasta el 19 de septiembre de 2005, o sea, ocho (8) años después de que el caso quedara sometido en espera de que se dictara Sentencia, que el abogado de la parte demandante presentó una moción ante el Tribunal de Primera Instancia, Sala de San Juan, solicitando que éste se resolviera lo antes posible. Durante esos ocho (8) años, tanto la parte demandante como la parte demandada se cruzaron de brazos. Ninguna de las partes presentó una moción en la que alertaran al tribunal sobre la demora.

Tampoco instaron un recurso de *mandamus* solicitando que se ordenara a la Hon. Carmen H. Pagani Padró a que dictara Sentencia en el mencionado caso. No fue hasta que la Jueza Pagani Padró emitió la sentencia desestimando la Demanda, que los demandantes, (parte desfavorecida por el dictamen) decidieron instar la queja en su contra. Por ende, estamos frente a un caso caracterizado, no solamente por el atraso de la Jueza Pagani Padró al dictar la Sentencia, sino también por la desidia de las partes en controversia al no exigir con mayor prontitud dicho dictamen.

En ese sentido, resulta ser una antinomia el que las partes permitan que se dicte Sentencia en un caso luego de transcurrido un término considerable --sin que hayan advertido al tribunal sobre la dilación-- para luego acudir ante esta Curia solicitando que se le imponga sanciones al juez o jueza que atendió la controversia por no haberla resuelto con premura.

Lo anterior nos convence de que la Hon. Carmen H. Pagani Padró no pudo haber incurrido en una violación ética solo por haberse dilatado diez (10) años en dictar Sentencia en el caso *María Rodríguez Casillas y otros v. Universidad de Puerto Rico y otros*, *supra*. Más aun en este tipo de situación donde existen otros remedios legales (mociones, *mandamus*) que hubiesen ejercido presión sobre la Hon. Carmen H. Pagani Padró para que

atendiera el referido caso dentro de un período de tiempo razonable.

Por el mismo fundamento, procede desestimar la Querella presentada por la Directora Administrativa de Tribunales en contra de la Jueza Pagani Padró. Como hemos señalado, la dilación de un juez o jueza en dictar sentencia en un caso, por sí sola, no acarrea la imposición de sanciones disciplinarias. Además, no surge de los autos que la Jueza Pagani Padró tuviera alguna motivación indebida para postergar la solución del caso en controversia. Tampoco que haya incurrido en un patrón de incompetencia manifiesta en la adjudicación de los casos ante su consideración. Así también lo concluyó la Comisión de Disciplina Judicial al exonerar a la Jueza Pagani Padró de haber incurrido en conducta constitutiva de infracción a los Cánones de Ética Judicial por la dilación en resolver el caso de *Rodríguez Casillas* por tratarse de un caso aislado en el historial profesional de ésta.

En ese tenor, creemos que la tardanza de la jueza en resolver *Rodríguez Casillas* fue una actuación aislada en su historial profesional. Aunque la Jueza Pagani Padró fue relevada en tres ocasiones de sala para atender casos que tenía sometidos y pendientes de resolución, esto no significa, *ipso facto*, que haya sido incompetente. Por el contrario, en su última evaluación, la Comisión de Evaluación Judicial calificó a la Jueza Pagani Padró en

un nivel 5 de ejecución, lo cual es sinónimo de que sus ejecutorias sobrepasaban por mucho lo esperado y de que proyectaba un alto nivel de calidad.

Debemos añadir que dicha dilación no pasará desapercibida, puesto que ésta podrá ser considerada por la Comisión de Evaluación Judicial a la hora de pasar juicio, nuevamente, sobre el desempeño de la Hon. Carmen H. Pagani Padró. Ello nos parece que es un buen disuasivo para que los jueces procuren atender con diligencia los casos que tengan ante sí.

Ciertamente, el problema de la demora judicial en las distintas instancias de nuestro sistema judicial no es novel. F. H. Denton, *Seminario sobre la Demora Judicial: La Administración Eficiente de la Justicia*, 77 Rev. Jur. U.P.R. 915, 918 (2008). Somos conscientes de que este problema podría afectar la confianza de la ciudadanía en su sistema de justicia. *Íd*. Ahora bien, por más indeseables que sean los atrasos en la adjudicación y tramitación de los asuntos ante los distintos tribunales de este país, ello no debe utilizarse como motivo para sancionar disciplinariamente a los jueces que incurran en una mera dilación al disponer de un caso.

Por eso, si bien hay que hacerle frente a este problema a través de todos los mecanismos posibles, creemos que su solución no puede estar cimentada en el atropello de los miembros de la judicatura. Máxime cuando se ha reconocido que "la tardanza en resolver los casos

tiene múltiples causas". *Íd.*, pág. 919. Así por ejemplo, estudios que se han realizado sobre la carga de trabajo a nivel del Tribunal de Primera Instancia de Puerto Rico concluyen que los jueces superiores no cuentan con el personal de apoyo necesario para llevar a cabo su función judicial. Véase, C. J. Sagardía Abreu, supra, pág. 992.

En fin, a la luz de los fundamentos esbozados, resolvemos que no procede sancionar a la Hon. Carmen H. Pagani Padró por haberse demorado diez (10) años en dictar Sentencia en el caso *María Rodríguez Casillas y otros v. Universidad de Puerto Rico y otros*, *supra*.

**IV**

Por los fundamentos que anteceden, se desestima la Querella presentada contra la Hon. Carmen H. Pagani Padró.

Se dictará sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Hon. Carmen H. Pagani Padró

Jueza Superior

Tribunal de Primera Instancia
Sala de San Juan

AD-2009-1

Conducta

Profesional

SENTENCIA

San Juan, Puerto Rico, a 5 de abril de 2011.

Por los fundamentos antes expresados, se desestima la Querella presentada contra la Hon. Carmen H. Pagani Padró.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente Señor Hernández Denton emitió una Opinión Disidente y Concurrente. La Juez Asociada Señora Rodríguez Rodríguez emitió una Opinión Disidente.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Carmen H. Pagani Padró                    AD-2009-1

Opinión Disidente y Concurrente emitida por el Juez Presidente SEÑOR HERNÁNDEZ DENTON

San Juan, Puerto Rico, a 5 de abril de 2011.

*"Justice delayed is justice denied".*

-William E. Gladstone[8]

Disentimos de la decisión tomada en el día de hoy por el Tribunal en aquella parte en que pauta que un juez que se demora excesivamente en resolver un caso —en este caso particular por diez (10) años— no viola per se los Cánones de Ética Judicial, 4 L.P.R.A. Ap. IV-B.

Con el mayor respeto a los criterios de los compañeros, entendemos que **la decisión del Tribunal ignora el reclamo público de mayor agilidad,**

---

[8] *Speech in House of Commons, British Parliament*, 16 Mar. 1868, *en* The Yale Book of Quotations, Ed. F. Shapiro, Yale University Press, New Haven and London, pág. 312.

**laboriosidad y eficiencia en los procesos judiciales.** En esencia, la Opinión Per Curiam deja sin efecto el contenido de los referidos cánones en la medida en que le requieren a todos los jueces y juezas un alto grado de diligencia en la adjudicación de los asuntos ante su consideración. De nuestra parte no podemos endosar un curso de acción que, en efecto, constituye un mensaje de tolerancia a la justicia tardía. Ello, pues para este servidor la justicia lenta jamás es justicia.

Ahora bien, en vista de que la queja presentada en contra de la Jueza Superior Hon. Carmen Pagani Padró versaba sobre un asunto novel en nuestra jurisdicción, y en atención al largo historial de la jueza en la Judicatura y a que ésta aceptó que la dilación en controversia fue irrazonable, concurrimos con la determinación del Tribunal de archivar la querella presentada en su contra.

I.

Los hechos de la querella de epígrafe se resumen adecuadamente en la Opinión del Tribunal y en la Opinión Disidente de la compañera Juez Asociada señora Rodríguez Rodríguez, por lo que no es necesario exponerlos en su totalidad nuevamente.

En esencia, no existe controversia de que la Jueza Pagani Padró se demoró más de diez años en dictar sentencia en el caso María Rodríguez Casillas y otros v. Universidad de Puerto Rico y otros, Civil Núm. FDP-90-0309, desde que dicha acción judicial quedó sometida en los méritos. A su vez, tampoco existe controversia en

cuanto a que ese caso presentaba varias controversias de gran complejidad técnica, y que el expediente contenía una voluminosa prueba documental y testifical que requería dedicación y tiempo para cualquier adjudicador que la fuera aquilatar de manera responsable, diligente y mesurada.

Luego de múltiples incidentes procesales relacionados con el trámite de la querella de autos, la Comisión de Disciplina Judicial emitió un Informe en el que concluyó que la Jueza Pagani Padró no había violado los Cánones de Ética Judicial al demorarse en dictar sentencia en el caso de Rodríguez Casillas v. Universidad de Puerto Rico, *supra*, por un término de más de diez años. Al recomendar la desestimación y el archivo de la querella, la Comisión adujo que dicho incidente se trató de un evento aislado en su historial profesional, que el referido caso era sumamente complejo por el volumen de prueba documental y testifical, y que del expediente no surgía ninguna gestión administrativa dirigida a dar seguimiento a la resolución del caso luego de que la Jueza Pagani Padró fue trasladada a la Región Judicial de San Juan.

Por su parte, el Comisionado Asociado, Lcdo. Carlos E. Ramos González, emitió un Voto Explicativo mediante el cual concurrió con esta recomendación. No obstante, éste concluyó que aunque la dilación en dictar sentencia pudo haber constituido una violación ética, este caso fue aislado y no era apropiado imponer una sanción dado que este Tribunal aún no se había expresado sobre los

contornos disciplinarios del deber ético de los jueces de resolver los casos de manera diligente, ágil y eficiente.

Todas estas circunstancias debieron haber sido sopesadas por el Tribunal para resolver el caso ante nos, tal como lo hizo la Comisión de Disciplina Judicial en el referido Informe. Sin embargo, la mayoría va más allá de los hechos particulares de este caso para cerrar las puertas a que en el futuro ni tan siquiera se considere una querella contra un juez o jueza por demorarse excesivamente al dictar sentencia en un caso sometido en los méritos.

II.

A.

De entrada, reconocemos que este Tribunal no se había pronunciado anteriormente sobre qué constituye una tardanza indebida en la adjudicación de un caso a la luz de los Cánones de Ética Judicial, *supra*. Aun así, no puede haber duda alguna que **desde el Preámbulo de ese código deontológico se promueve la eficiencia, la agilidad y la rapidez** como preceptos fundamentales para todo juez y jueza que ostenta el deber de resolver los casos y controversias que se presenten ante los tribunales del país. Véase Preámbulo, Cánones de Ética Judicial, *supra*; Heftler v. Const. Co. v. Tribunal Superior, 103 D.P.R. 844, 846 (1975).

Cónsono con lo anterior, el Canon 4 de Ética Judicial dispone que todos los jueces y juezas están obligados a cumplir de manera cuidadosa y diligente con "las obligaciones administrativas que les imponen las

leyes y los reglamentos aplicables a la Rama Judicial". 4 L.P.R.A. Ap. IV. IV-B, C-4. En lo pertinente, entre esos deberes se incluye la obligación que tienen los jueces del Tribunal de Primera Instancia de resolver los casos contenciosos dentro de los noventa días desde la fecha en que fueron sometidos para su adjudicación. Véase la Regla 24(a) de las Reglas para la Administración del Tribunal de Primera Instancia de Puerto Rico, 4 L.P.R.A. Ap. II-B, la cual establece, además, que dicho término podría extenderse **de manera razonable** sólo cuando la naturaleza del asunto o alguna causa extraordinaria lo hagan necesario.

A su vez, el Canon 8 de Ética Judicial le impone a los jueces el deber de ser "laboriosos, prudentes, serenos e imparciales." 4 L.P.R.A. Ap. IV-B, C. 4. Dicho canon también está investido del fin perseguido por ese cuerpo normativo disciplinario de garantizar que los casos y controversias se resuelvan de manera ágil, efectiva y eficiente, como producto del esfuerzo laborioso e incansable de los jueces y juezas al impartir y administrar la justicia. Con mayor relevancia aún, el Canon 17 de Ética Judicial dispone que "[l]as juezas y los jueces **serán diligentes en la administración del proceso judicial de los asuntos sometidos ante su consideración y procurarán que las partes también lo sean**[…]". 4 L.P.R.A. Ap. IV-B, C. 17. (Énfasis nuestro). Con relación a esa norma deontológica dirigida a asegurar que los jueces y juezas sean diligentes, es menester enfatizar que al aprobar los Cánones de Ética Judicial

actualmente vigentes, como apéndice de la Resolución de este Tribunal se incluyó el siguiente comentario sobre el referido Canon 17:

El Informe que la Comisión Futurista de los Tribunales sometió a la consideración del Tribunal Supremo en el 2000 reveló que existe una percepción negativa general entre los ciudadanos en cuanto al tiempo que toma resolver los casos en los tribunales. La mayoría de las personas entrevistadas señalaron que el tiempo que se toman los procesos judiciales es excesivo. Visión en Ruta al Futuro, Vol. II, Informe de la Comisión Futurista de los Tribunales, abril 2000, página 19. **Para cambiar esa percepción negativa es necesario, de acuerdo con el canon, que las juezas y los jueces eviten toda dilación innecesaria en los procedimientos** […]. In re: Aprobación de Cánones de Ética Judicial de 2005, 164 D.P.R. 403, Apéndice I, disponible en 2005 TSPR 39 (2005). (Énfasis nuestro).

El historial de esa norma disciplinaria refleja un interés particular en atender el asunto de la demora judicial desde el crisol de los Cánones de Ética Judicial. De hecho, el Canon 17 requiere que los jueces y juezas sean diligentes en la administración de los procesos judiciales, y el imperativo ético que se desprende de dicho articulado para estos funcionarios de la Rama Judicial tiene vida propia e independiente.

A modo ilustrativo, el Model Code of Judicial Conduct, promulgado por el American Bar Association en el

2011, también atiende el problema de la demora en la adjudicación de un caso o controversia desde la óptica de la ética judicial. En particular, la Regla Modelo 2.5(A) establece que "[a] judge shall perform judicial and administrative duties, competently and diligently". Model Code of Judicial Conduct, Center for Professional Responsibility, American Bar Association, 2011 Ed., pág. 19. Dicha Regla se acompaña de los siguientes comentarios, los cuales ilustran un interés particular en que todos los jueces y juezas eviten, a modo individual, incurrir en demoras irrazonables al adjudicar o administrar los asuntos ante su consideración:

[…]

[3] Prompt disposition of the court's business requires a judge to devote adequate time to judicial duties, to be punctual in attending court and **expeditious in determining matters under submission**, and to take reasonable measures to ensure that court officials, litigants, and their lawyers cooperate with the judge to that end.

[4] In disposing of matters promptly and efficiently, a judge must demonstrate due regard for the rights of parties to be heard and to have issues resolved without unnecessary cost or delay. A judge should monitor and supervise cases in ways that reduce or eliminate dilatory

practices, avoidable delays and unnecessary costs. *Íd.,* pág. 20. (Énfasis nuestro).[9]

En este caso nos enfrentamos a unas imputaciones relacionadas a la supuesta infracción a estos preceptos éticos por parte de una Jueza del Tribunal de Primera Instancia, como consecuencia de haberse demorado por más de diez años en resolver un caso ante su consideración. No cabe duda, pues, que la presente controversia se enmarca en el contexto de la disciplina judicial bajo la jurisdicción de este Tribunal. Véanse los Arts. 6.001 y 6.002 de la Ley Núm. 201 de 22 de agosto de 2003, Ley de

---

[9]De modo similar, el Canon Modelo 3(8) de 2007 disponía que "[a] judge shall dispose of all judicial matters promptly, efficiently and fairly". Véase Model Code of Judicial Conduct, Center for Professional Responsability, American Bar Association, *disponible                                                               en* http://www.americanbar.org/groups/professional_responsibility/pub lications/model_code_of_judicial_conduct/model_code_of_judicial_c onduct_canon_3.html (última vista el 3 de febrero de 2011). Por su parte, los comentarios de esa edición expresaban lo siguiente:

> In disposing of matters promptly, efficiently and fairly, a judge must demonstrate due regard for the rights of the parties to be heard and to have issues resolved without unnecessary cost or delay. Containing costs while preserving fundamental rights of parties also protects the interests of witnesses and the general public. A judge should monitor and supervise cases so as to reduce or eliminate dilatory practices, avoidable delays and unnecessary costs. A judge should encourage and seek to facilitate settlement, but parties should not feel coerced into surrendering the right to have their controversy resolved by the courts.

> Prompt disposition of the court's business requires a judge to devote adequate time to judicial duties, to be punctual in attending court and expeditious in determining matters under submission, and to insist that court officials, litigants and their lawyers cooperate with the judge to that end. *Íd.*

Judicatura del Estado Libre Asociado de Puerto Rico de 2003, 4 L.P.R.A. secs. 25i, 25j.

B.

A la luz de los preceptos deontológicos antes enunciados, en el presente caso hubiésemos delineado los contornos de una normativa precisa que atendiera la problemática de la demora judicial en el contexto disciplinario. De esa forma, se haría valer el deber ineludible de todo juez y jueza de administrar la justicia y los procesos judiciales con agilidad, eficiencia y efectividad al amparo de los Cánones de Ética Judicial. Sin embargo, **la mayoría del Tribunal sorprendentemente aprovecha esta coyuntura para resolver que una dilación per se en dictar sentencia nunca debería considerarse como una violación a un deber ético que pudiera ser objeto de sanciones.**

Según la Opinión Per Curiam, el que un juez se demore en disponer de los casos ante su consideración no amerita, por sí solo, que se acuda a la vía disciplinaria. Para que proceda una querella de esta naturaleza bajo la nueva norma pautada por la mayoría, el promovente debe probar las motivaciones indebidas que causen la demora en el trámite de uno o más casos. Ello, independientemente de lo irrazonable, innecesaria o excesiva que sea la demora judicial en controversia.

Diferimos de esa apreciación. Nótese que ni el texto ni la intención legislativa plasmada en el Canon 17 de Ética Judicial, *supra*, se refieren a las motivaciones subjetivas de los jueces o a los factores exógenos que

causan la tardanza en resolver un caso o en administrar el proceso judicial en general, sino a la existencia objetiva de una falta de diligencia en el quehacer judicial. La diligencia en la administración judicial que le exige el referido Canon a todos los jueces y juezas no es otra cosa que la prohibición específica de que medie la negligencia en su desempeño como administradores del proceso judicial.

El término 'negligencia' significa descuido o falta de cuidado,[10] por lo que resulta forzoso concluir que ese Canon de Ética Judicial persigue prohibir, a modo individual para todos los jueces y juezas, el descuido o falta de cuidado en la administración del proceso judicial. Ante el señalamiento de una demora excesiva en el proceso judicial, el referido Canon requiere que el juez o la jueza demuestre que la dilación en controversia fue necesaria, razonable y justificada, a la luz de la totalidad de las circunstancias del caso. Véase <u>In re: Aprobación de Cánones de Ética Judicial de 2005</u>, *supra.* Así, pues, la norma pautada por la mayoría del Tribunal en este caso es superflua, en la medida que requiere que se prueben las motivaciones indebidas que ocasionaron la demora judicial en controversia.

Por otro lado, la mayoría reconoce que podría estar sujeto a una sanción disciplinaria aquella dilación que esté relacionada razonablemente con un patrón de "incompetencia manifiesta" del juez en el desempeño de

---

[10]Diccionario de la Lengua Española, Real Academia Española, Vigésima segunda edición, *en* http://buscon.rae.es/draeI/SrvltConsulta?TIPO_BUS=3&LEMA=negligencia (última visita, 2 de febrero de 2011).

sus funciones judiciales. Según la normativa pautada por el Tribunal, en esos casos el promovente tendría que demostrar que "la demora judicial en controversia fue ocasionada por un comportamiento repetitivo que trasluzca una carencia mínima de diligencia en la disposición de los casos". Opinión Per Curiam, pág. 14.

Ahora bien, el carácter absoluto de ese escrutinio referente a la negligencia crasa del juez o jueza que incurre en un patrón de múltiples demoras judiciales sencillamente se trata de una causal para la disciplina judicial que establece la Ley de la Judicatura de 2003, la cual es totalmente independiente de los Cánones de Ética Judicial imputados en este caso y discutidos en la Opinión Per Curiam. Adviértase que el Artículo 6.001 de la referida ley ya dispone que estará sujeto a la imposición de medidas disciplinarias todo juez que:

(1) Incurra en violación a la ley, a los Cánones de Ética Judicial, a los Cánones de Ética Profesional o a la reglamentación administrativa aplicable, cuando medie una determinación final por un foro competente.

(2) **Manifieste negligencia crasa, inhabilidad o incompetencia profesional en el desempeño de sus deberes judiciales.** 4 L.P.R.A. 25i. (Énfasis nuestro).

Evidentemente, el estándar de "incompetencia manifiesta" elaborado por la mayoría no es más que una reiteración de la segunda causal para la imposición de medidas disciplinarias contra los jueces que surge de la

Ley de la Judicatura, *supra*, la cual impone una gran carga probatoria al promovente de la sanción disciplinaria. Esa negligencia crasa no se trata, pues, de la contraparte a la obligación que tienen todos los jueces y juezas de ser "diligentes en la administración del proceso judicial de los asuntos sometidos ante su consideración" que establece el Canon 17 de Ética Judicial, *supra*.

Por ende, resulta contradictorio concluir que la negligencia de un juez o jueza en resolver prontamente un caso sometido ante su consideración está fuera del alcance del poder disciplinario de la Comisión de Disciplina Judicial, que es el cuerpo llamado a auxiliar a este Tribunal en el ejercicio de su responsabilidad en cuanto a los asuntos de ética judicial. Véanse Art. 6.005 de la Ley Núm. 201 de 22 de agosto de 2003, Ley de Judicatura del Estado Libre Asociado de Puerto Rico de 2003, 4 L.P.R.A. sec. 25m; Regla 12(a) de Disciplina Judicial, 4 L.P.R.A. Ap. XV-B.

Ciertamente, al impedir que ni tan siquiera se consideren quejas éticas sobre la dilación en la disposición de los casos y requerir, para que proceda una querella de esa índole, que se prueben las motivaciones indebidas que causen la demora o la "incompetencia manifiesta" del juez querellado, se desnaturaliza el propósito de los Cánones de Ética Judicial en cuanto éstos reglamentan el deber de diligencia de los jueces y juezas en la administración del proceso judicial. Por lo tanto, discrepamos de la normativa elaborada por la

mayoría para atender la querella de autos y desestimar la querella presentada contra la Jueza Pagani Padró bajo la premisa de que "sería impropio disciplinar a un miembro de la judicatura por la mera tardanza en la solución de un caso ante su consideración". Opinión Per Curiam, pág. 16. Consideramos que dicho curso de acción desnaturaliza la intención claramente plasmada en los Cánones de Ética Judicial de 2005 de exigir que todos los jueces y juezas sean diligentes en la administración del proceso judicial.

En vista de que la demora en la emisión de una decisión judicial es contraria al propio concepto de la justicia, hubiésemos elaborado una normativa ética que promoviera la diligencia adjudicativa entre todos los funcionarios de la Rama Judicial. Así, pues, de forma análoga a la Juez Rodríguez Rodríguez en su Opinión Disidente, hubiésemos pautado que una demora en la adjudicación de un caso infringe los Cánones de Ética Judicial si se prueba que la tardanza en dictar sentencia fue de por sí irrazonable o indebida. Para cumplir con ese estándar, no habría que probar que las *motivaciones subjetivas* del juez querellado que ocasionaron la tardanza fueron indebidas, sino que la demora como tal fue violatoria del deber que tienen todos los jueces y juezas de ser diligentes al administrar el proceso judicial. Canon 17 de Ética Judicial, *supra*. Por tanto, la razonabilidad de una demora se debe determinar a base de la totalidad de las circunstancias, de forma que se vindique el deber fundamental de todos los jueces y

juezas de ser laboriosos y resolver los casos y controversias de forma justa, rápida y económica.

En atención a ello, reiteramos nuestra discrepancia con la mayoría en cuanto despoja a la Comisión de Disciplina Judicial y a este Tribunal de su autoridad para atender querellas fundamentadas en la dilación negligente de un juez o jueza en dictar sentencia o resolver un caso ante su consideración.

### III.

Por otra parte, no podemos pasar por alto algunos señalamientos que surgen de la Opinión Per Curiam con relación al funcionamiento del Tribunal de Primera Instancia. Para justificar la normativa pautada en este caso, la Opinión Per Curiam se refiere en varias ocasiones a la falta de jueces y recursos en nuestros tribunales y a la carga pesada de trabajo que tienen los jueces como consecuencia del alto volumen de pleitos instados por los ciudadanos.

No obstante, somos del criterio que resulta desenfocado referirse a las características estructurales de nuestros tribunales para pasar juicio sobre la conducta individual de un juez o jueza que se demoró excesivamente en dictar sentencia en un caso particular, luego de que el mismo estaba sometido y pendiente de que se dictara sentencia. En vista de que siempre hemos reconocido que el problema de la demora judicial incide sobre la confianza de la ciudadanía en su sistema de justicia, entendíamos necesario promover una normativa ética en este caso que adelantara el objetivo de procesos

judiciales efectivos y eficientes como garantía primordial del derecho al acceso a la justicia. Véase F. Hernández Denton, La Administración Eficiente de la Justicia, 77 Rev. Jur. U.P.R. 915, 918 (2008). Más allá de los recursos que le asigne la Asamblea Legislativa a la Rama Judicial y las múltiples iniciativas para promover el manejo efectivo y eficiente de los casos que ha desarrollado la Oficina de Administración de Tribunales, **le corresponde de manera individual a todos los jueces y juezas cumplir con su obligación insoslayable de ser diligentes en la administración judicial de los casos ante su consideración.**

Por esa razón, anteriormente hemos enfatizado que además de conseguir más recursos y buscar soluciones administrativas para dotar de mayor eficiencia al sistema de justicia, "hay que tener presente que en ocasiones **el problema de la demora es más una cuestión de actitudes, de expectativas informales e individuales, o de las mismas prácticas de abogados, de jueces o de fiscales**". *Íd.*, pág. 919. (Énfasis nuestro). De igual forma, hemos reconocido que "frecuentemente **la mejor forma de combatir la demora judicial es mediante la implantación de cambios en la cultura legal**". *Íd.* (Énfasis nuestro). La norma ética pautada por la mayoría en este caso, sin embargo, no promueve los cambios de actitudes o las transformaciones en la cultura legal que son necesarios para atender el asunto de la demora judicial desde su raíz.

Aun así, conviene aclarar que desde que asumimos la Presidencia del Tribunal Supremo de Puerto Rico, hemos tomado medidas administrativas para aumentar los recursos asignados a la función judicial. Además, hemos fomentado la agilidad y la eficiencia en el trámite judicial a través de varias iniciativas jurídicas y administrativas. *Íd.*, págs. 920-924. Entre varios proyectos e iniciativas que ya se han implantado, podemos destacar la revisión en los últimos años de las Reglas de Evidencia y las Reglas de Procedimiento Civil por este Tribunal.

Como se sabe, dichas reglas promueven el uso de la tecnología en los procesos judiciales, y contienen disposiciones dirigidas a establecer un sistema integrado y uniforme de administración de casos. Por ejemplo, la nueva Regla 37 de Procedimiento Civil, 32 L.P.R.A. Ap. V. R. 37, requiere que tanto las partes como los jueces manejen de forma más efectiva los calendarios para asegurar el movimiento ágil de los casos en todas las etapas del procedimiento judicial. Además, las referidas reglas modernizaron y flexibilizaron nuestro ordenamiento procesal y probatorio al eliminar etapas procesales anacrónicas, acortar varios términos y otorgarle mayor flexibilidad a los jueces para agilizar los procesos judiciales de manera eficiente y diligente.

En atención al mismo objetivo, la Oficina de Administración de Tribunales implantó el Sistema Inteligente de Manejo de Casos ("SIMEC"), del programa de "Business Intelligence". En síntesis, éste consiste de una herramienta especializada para la obtención y manejo

en tiempo real de estadísticas mediante la cual todos los jueces y juezas, por medio de sus computadoras personales, pueden revisar el inventario de casos presentados durante el año fiscal, la relación de casos resueltos durante ese año, y una relación histórica, por fecha de presentación hasta el día anterior, de los casos activos que tiene asignado cada juez o jueza. Con dicha herramienta hemos logrado cumplir con la Orden Administrativa OA-JP-2009-118, que emitimos para poner en vigor el Plan Estratégico de la Rama Judicial de Puerto Rico 2007-2011: Obra de Justicia, y su meta de atender y resolver con rapidez y eficiencia los asuntos y controversias que se presentan ante los tribunales del país.[11]

Además, con la herramienta de SIMEC se encamina el desarrollo de un Sistema Unificado de Manejo de Casos (SUMAC), que le permitirá a los jueces y juezas de todas las regiones judiciales seguir el tracto procesal de un caso desde que se presenta en los tribunales hasta que finaliza mediante alertas e indicadores digitalizados de las etapas críticas del proceso y de los términos aplicables. Ello, en conjunción con las notificaciones realizadas mediante el Registro Único de Abogados y el pago único de aranceles que se viabilizó recientemente

---

[11]En esa Orden Administrativa, ordenamos a todas las secretarías del Tribunal de Primera Instancia y del Tribunal de Apelaciones notificar una relación de los casos de naturaleza civil que en el término de dos años de presentados no hubiesen recibido una determinación final. Además, se dispuso que los jueces administradores dictarán las órdenes necesarias para la solución justa, rápida y eficiente de los casos. Entre las medidas mencionadas, se incluyó "proveer mecanismos y herramientas, así como el apoyo del recurso humano y técnico necesario, dirigido a aquellos jueces y juezas que puedan requerir asistencia para la disposición de los casos presentados". OA-JP, 2009-118, res. el 30 de octubre de 2009, pág. 2.

mediante Resolución de este Tribunal, facilitará la eventual transición a un sistema de presentación electrónica de documentos en nuestros tribunales. Véase In re: Aprobación de Derechos Arancelarios, res. el 24 de septiembre de 2010, 2010 TSPR 232; Plan Estratégico de la Rama Judicial de Puerto Rico 2007-2011: Obra de Justicia, supra.

Por otro lado, y con relación a los señalamientos de la Opinión Per Curiam sobre la carga de trabajo y los recursos humanos de nuestros tribunales con el propósito de justificar o minimizar las demoras individuales de algunos jueces y juezas, nótese que según un estudio independiente realizado recientemente por el National Center for State Courts, la Rama Judicial de Puerto Rico tenía uno de los niveles de esclarecimiento de casos civiles más altos en los Estados Unidos. Véase Court Statistics Project, Examining the Work of State Courts: An Analysis of 2008 State Court Caseloads, (National Center for State Courts, 2010), pág. 29 (disponible en http://www.ncsconline.org/d_research/csp/2008_ files/EWSC-2008-Online%20Version%20v2.pdf). Dentro de la muestra de varias jurisdicciones estatales que fueron examinadas, Puerto Rico y Wisconsin fueron los únicos sistemas unificados de justicia que en el 2008 sobrepasaron el 100% de los casos civiles esclarecidos en un año. Íd.[12]

---

[12]Según el referido estudio, esa estadística se calcula al dividir el número de casos resueltos o inactivos por el número de casos nuevos presentados, reabiertos o reactivados. Íd.

Dicho estudio también reflejó que en el Tribunal de Primera Instancia de Puerto Rico habían menos casos nuevos asignados por juez en el año 2008 que en las demás jurisdicciones estatales unificadas bajo el escrutinio del National Center for State Courts. Mientras que en un estado como Connecticut había un promedio de 2,326 casos nuevos asignados a cada juez y en Washington, D.C. había un promedio de 1,968 casos por juez, en Puerto Rico se le asignó a cada juez un promedio de 726 casos nuevos. *Íd.*, pág. 21.[13] Además, por cada 100,000 habitantes, en Connecticut había 5.1 jueces, en Washington D.C. había 10.5 jueces y en Puerto Rico había 8.2 jueces.

En abstracción a esa realidad, la Opinión Per Curiam invoca un estudio anterior de esa misma organización, comisionado por la Oficina de Administración de Tribunales en el 2003, para considerar como un factor relevante en cuanto a la demora imputada en este caso la alegada carencia de jueces y recursos humanos en el Tribunal de Primera Instancia. En particular, la mayoría cita un artículo del Prof. David Helfeld en el cual éste se refiere a dicho estudio para sugerir que nuestros tribunales de instancia no cuentan con suficiente número de recursos humanos, lo cual según ese informe incluía a los jueces, para atender los casos que se presentan a dichos foros. Véase Opinión Per Curiam, pág. 11, *citando a* D.M. Helfeld, <u>El Seminario sobre la Demora Judicial: Diseño, Resultados y Recomendaciones</u>, 77 Rev. Jur. 891, 897-898 (2008).

---

[13] Dichas estadísticas excluyen los casos relacionados a las infracciones de tránsito en todas las jurisdicciones mencionadas.

Ciertamente, en el referido estudio el National Center for State Courts concluyó que para julio de 2003 había un déficit de 20.46 jueces en el Tribunal de Primera Instancia de Puerto Rico. Véase National Center for State Courts, Workload Assessment Model for the Puerto Rico Superior Court, Final Report, Court Services Division, Denver, 2003, pág. 22. Sin embargo, **la Opinión Per Curiam no toma en consideración que precisamente a la luz de las recomendaciones de ese mismo estudio, la Asamblea Legislativa aprobó un aumento que sobrepasó esa cantidad recomendada en cuanto al número de jueces superiores que componen el Tribunal de Primera Instancia.** Específicamente, la Ley de Judicatura del 2003 dispuso para la creación de 30 vacantes adicionales de jueces y juezas superiores en el Tribunal de Primera Instancia. Véase Art. 5.002 de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico, Ley Núm. 21 de 22 de Agosto de 2003, 4 L.P.R.A. sec. 25b.[14]

De lo anterior es obvio que la tesis central de la Opinión del Tribunal se basa en estadísticas obsoletas y conjeturales. La realidad empírica claramente es otra, pues el informe del National Center for State Courts citado por el profesor Helfeld en su artículo, y al cual

---

[14]El Plan de Reorganización de la Rama Judicial de 1994 dispuso que el Tribunal de Primera Instancia se debía constituir de un máximo de doscientos veintitrés (223) Jueces Superiores y ciento cinco (105) Jueces Municipales. Véase Art. 5.002 de la Ley Núm. 1 de 28 de julio de 1994, según enmendada. 4 L.P.R.A. sec. 22n (derogada). Por otro lado, la Ley de la Judicatura de 2003 dispuso que el Tribunal de Primera Instancia quedaría constituido por doscientos cincuenta y tres (253) Jueces Superiores y ochenta y cinco (85) Jueces Municipales. 4 L.P.R.A. sec. 25b.

se refiere la mayoría para justificar esta decisión, se utilizó particularmente para fundamentar un aumento en la plantilla de jueces superiores que constituyen el Tribunal de Primera Instancia. Más aún, ese aumento en la plantilla de jueces superiores promulgada por la Asamblea Legislativa fue efectiva para atender el asunto de la demora judicial en términos generales, según se desprende de las estadísticas antes citadas del National Center for State Courts del 2008.

En esta ocasión, no puede haber duda que la normativa pautada por el Tribunal podría tener repercusiones negativas para la administración ágil y eficiente de los procesos judiciales y de la justicia. **Increíblemente, la mayoría sustenta esta normativa en un artículo del ex-Decano Helfeld para permitir y promover precisamente lo que el distinguido letrado le ha preocupado por tantos años y que, en esencia, recoge la frase popular: justicia lenta no es justicia.** Al sustraer de todo contenido al Canon 17 de Ética Judicial, *supra,* se concede, para todos lo efectos prácticos, una inmunidad indebida para los jueces y juezas que se tarden de manera excesiva y negligente en resolver los casos asignados a sus salas. En vista de ello, nos vemos obligados a disentir de la norma pautada por la mayoría en este caso.

IV.

Aunque en el procedimiento disciplinario de epígrafe no se presentó prueba de motivaciones indebidas que causaran la demora de la Jueza Pagani Padró de dictar sentencia en Rodríguez Casillas v. Universidad de Puerto

Rico, *supra*, esa realidad no es suficiente para demostrar que ésta fue diligente en la administración judicial del referido caso al amparo del Canon 17. Además, tampoco demuestra que la Jueza Pagani Padró cumplió con el Canon 4 de Ética Judicial, *supra*, el cual dispone que todos los jueces y juezas están obligados a cumplir de manera cuidadosa y diligente con "las obligaciones administrativas que les imponen las leyes y los reglamentos aplicables a la Rama Judicial".

No olvidemos que como el proceso judicial en controversia se dilucidó en el Tribunal de Primera Instancia, aplica el término dispuesto en la Regla 24(a) de noventa días para que los jueces resuelvan los casos contenciosos desde la fecha en que éstos fueron sometidos para su adjudicación. Regla 24(a) de las Reglas para la Administración del Tribunal de Primera Instancia de Puerto Rico, *supra*. Además, dicha regla establece que el término de noventa días podría extenderse de manera razonable sólo cuando la naturaleza del asunto o alguna causa extraordinaria lo hagan necesario, por lo que habría que evaluar la totalidad de las circunstancias de ese caso para determinar si la demora de diez años para dictar sentencia en Rodríguez Casillas v. Universidad de Puerto Rico, *supra*, fue objetivamente razonable.

Tras evaluar todas las circunstancias del caso, somos del criterio que a la luz de la normativa deontológica antes expuesta, la tardanza objetiva en la resolución de ese caso apuntaría hacia una infracción a los Cánones 4 y 17 de Ética Judicial, *supra*. Toda vez que la Jueza Pagani

Padró incluso aceptó en el procedimiento de epígrafe que no fue razonable el término de diez años que tardó en dictar sentencia en Rodríguez Casillas v. Universidad de Puerto Rico, *supra*, luego de estar sometido el caso, resulta forzoso concluir que ésta violó la Regla 24(a) de Administración del Tribunal de Primera Instancia, *supra*, lo cual incidiría directamente sobre la conducta proscrita por los Cánones 4 y 17 de Ética Judicial, *supra.*

A pesar de lo antes expuesto, concurrimos con el Tribunal en cuanto éste determina desestimar la querella de epígrafe. Pero a diferencia de la mayoría, entendemos que ese curso de acción procedía a la luz del buen historial de la Jueza Pagani Padró en la Judicatura y el carácter novel de este caso, y no porque entendiéramos que sería impropio disciplinar a un miembro de la judicatura por una dilación negligente en la solución de un caso ante su consideración.

Este Tribunal nunca se había expresado anteriormente sobre el alcance de los Cánones de Ética Judicial con relación a una queja sobre una demora excesiva en resolver un caso, por lo que hubiésemos pautado la norma antes expuesta de manera prospectiva. Además, coincidimos con la mayoría en que las partes afectadas por la demora en ese caso no utilizaron plenamente los remedios disponibles durante el procedimiento judicial para

insistir o compeler a que la jueza querellada dictara sentencia durante un término razonable.[15]

Por último, y a pesar de que la Jueza Pagani Padró había sido relevada de sala en varias ocasiones como consecuencia del cúmulo de su trabajo, es meritorio reconocer que esta jueza tiene un historial de servicio en la Rama Judicial de alrededor de veintiún años, en los cuales ha demostrado vocación, compromiso y dedicación a la judicatura. Durante esos años su desempeño judicial le mereció una calificación muy buena de la Comisión de Evaluación Judicial. Asimismo, resulta meritorio tomar en cuenta como atenuante que la Juez Pagani Padró reconoció que la demora fue irrazonable y que se trató de una situación que no se repetirá. Por estas razones, concurrimos con la determinación del Tribunal de archivar la querella de epígrafe.

V.

En atención a lo anterior, disentimos de la norma pautada por la Opinión Per Curiam, pero concurrimos con la determinación de archivar la querella de epígrafe.

Federico Hernández Denton
Juez Presidente

---

[15]Resulta ilustrativo que no fue hasta ocho años después a que el caso quedó sometido en los méritos que el abogado de la parte demandante presentó una moción ante el Tribunal de Primera Instancia para alertar a éste de que aún no había dictado sentencia. Además, las partes tampoco presentaron un recurso de mandamus para que se le ordenara a la jueza querellada a que dictara sentencia en el caso en controversia, y que cumpliera con la Regla 24(a) de Administración del Tribunal de Primera Instancia, *supra*. Véase Purcell Ahmed v. Pons Nuñez, 129 D.P.R. 711 (1992). Como reconoce la Opinión Per Curiam, no fue hasta que la Jueza Pagani Padró dictó sentencia mediante la cual se desestimó la mencionada demanda que los demandantes decidieron instar la queja de autos.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| *In re* | |
| Hon. Carmen H. Pagani Padró<br>Jueza Superior<br>Tribunal de Primera Instancia<br>Sala de San Juan | AD-2009-1 |

"El que ya está listo
 siempre con daño el esperar soporta."

Dante Alighieri, *La Divina Comedia*,
Infierno, Canto XXVIII

Opinión disidente emitida por la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico, a 5 de abril de 2011

El caso que tenemos ante nuestra consideración requiere que nos expresemos en torno a un asunto sobre el cual no nos habíamos pronunciado previamente, a saber: cuándo y bajo qué circunstancias la tardanza de un juez en dictar sentencia en un caso sometido ante su consideración se configura como una violación a los Cánones de Ética Judicial.

La respuesta que hoy ofrece la mayoría es por demás decepcionante. La determinación que anuncia la mayoría es

contraria a las más modernas tendencias que procuran exigir responsabilidad a quienes tienen la delicada encomienda de impartir justicia, allí donde éstos la han dilatado injustificadamente. En términos prácticos, esfuma la obligación de todo juez de dar cuenta por sus actos. Limita, injustificadamente las facultades y prerrogativas de la Comisión de Disciplina Judicial y eviscera de contenido los Cánones de Ética Judicial. Como resultado de lo anterior, se desvaloriza la diligencia y la laboriosidad en el desempeño judicial Temo que el dictamen mayoritario lacere la imagen de la Judicatura ante la ciudadanía, con lo que ello conlleva para cualquier sistema judicial.

Porque no comparto la visión de la mayoría, disiento.

I

La naturaleza de esta controversia requiere que repasemos rigurosamente los hechos que le sirven de trasfondo.

El 22 de septiembre de 1989 el señor Elexsy Pagán García sufrió un accidente automovilístico mientras viajaba en su motora por lo que fue trasladado en ambulancia al Hospital Regional de Carolina y dos horas más tarde fue referido a la Sala de Emergencia del Centro Médico. Una vez allí, se decidió trasladarlo al Hospital General San Carlos. Posteriormente, fue trasladado nuevamente al Centro Médico donde quedó recluido en la Sala de Cuidado Intensivo. El señor Pagán García falleció el 2 de octubre de 1989.

Luego de su deceso, su esposa e hijos así como varios otros familiares, instaron una demanda en daños y perjuicios por impericia médica contra, entre otros, el Estado Libre Asociado de Puerto Rico, la Universidad de Puerto Rico, la Administración de Servicios Médicos de Puerto Rico y el Hospital San Carlos. La demanda se presentó el 18 de junio de 1990 en el Tribunal de Primera Instancia, Sala Superior de Carolina. *María Rodríguez Casillas y otros v. Universidad de Puerto Rico y otros,* Civil Núm. FDP-90-0309 (*Rodríguez Casillas*).

Luego de innumerables incidentes procesales, la vista en su fondo comenzó el 25 de octubre de 1993 y concluyó el 10 de octubre de 1996. La jueza asignada a este caso fue la Hon. Carmen Heydee Pagani Padró.[16] Concluida la vista, la Jueza Pagani Padró le solicitó a las partes, por separado, que le remitiesen un memorando sobre determinaciones de hechos para lo cual les concedió hasta enero de 1997. Las partes sometieron sus respectivos memorandos y el último de éstos se recibió el 5 de marzo de 1997. **El caso quedó sometido en espera de que se dictase sentencia el 6 de marzo de 1997. El tribunal dictó sentencia desestimando la demanda el 4 de mayo de 2007.**

El 12 de marzo de 2008, varios de los demandantes en el caso presentaron una queja contra la Jueza Pagani Padró ante la Oficina de Asuntos Legales de la Administración de

---

[16] Previo a que el caso de referencia se le asignara a la Jueza Pagani Padró, hubo dos jueces que intervinieron en distintas instancias en este caso. La primera intervención de la Jueza Pagani Padró fue en abril de 1991.

Tribunales. En la queja se alegó que la tardanza excesiva en dictar sentencia fue una actuación abusiva de parte de la jueza, la cual ameritaba sanciones disciplinarias.

Recibida la queja, la Directora Administrativa de los Tribunales ordenó una investigación sobre lo alegado. El 16 de marzo de 2009, se rindió un informe en el cual se concluyó que la dilación de diez años y medio de la Jueza Pagani Padró en dictar sentencia constituyó una violación a su obligación de adjudicar con prontitud y en forma diligente, la cual "afectó adversamente la imagen de confianza, efectividad y diligencia de la que goza la Rama Judicial". El informe recomendaba que el asunto fuese remitido a la Comisión de Disciplina Judicial (la Comisión) para la acción que ésta estimase correspondiente.

El asunto fue referido a la Comisión y el 14 de abril de 2009, ésta dictaminó que del informe sometido se desprendía que existía "base suficiente para establecer la posibilidad de violaciones a los Cánones 4, 8, 12 y 17 de Ética Judicial". Además, la Comisión dispuso que existía prueba de una posible violación a la Regla 24 de las Reglas para la Administración del Tribunal de Primera Instancia del Estado Libre Asociado de Puerto Rico (las Reglas de Administración). 4 L.P.R.A. Ap. II-B. Ordenó consecuentemente que se presentara una querella contra la Jueza Pagani Padró.

El 4 de mayo de 2009, la Oficina de Administración de los Tribunales presentó una querella donde se alegó que la querellada había incurrido en violaciones a los Cánones

antes mencionados, así como a lo dispuesto en la Regla 24 de las Reglas para la Administración. El 29 de junio de 2009, luego de una oportuna solicitud de prórroga, la querellada contestó la querella y negó los cargos imputados. En su contestación, aceptó "que tardó más de lo usual en dictar sentencia en el caso *María Rodríguez, et al v. Universidad de Puerto Rico*, pero dicho suceso [era] uno aislado que no representa[ba] la manera en la cual la Jueza atiende sus salas y resuelve sus casos". Luego de un contencioso proceso de descubrimiento de prueba, las partes sometieron su Informe de conferencia con antelación a la vista (el Informe de conferencia).

La vista en su fondo quedó pautada para el 13 de octubre de 2009. Llegada esa fecha, las partes le informaron a la Comisión que habían llegado a un acuerdo mediante el cual, entre otras cosas, se daba por sometida la querella presentada por el expediente en autos. El acuerdo suscrito disponía que la querellante habría de retirar el tercer cargo imputado donde se alegaba violación al Canon 12 de Ética Judicial. La querellante reconoció también la labor efectuada por la querellada durante sus años de servicio en la Rama Judicial. También aceptó que en la última evaluación que la Comisión de Evaluación Judicial realizó sobre el desempeño de la Jueza Pagani Padró, ésta quedó ubicada "en un nivel 5 de ejecución, lo cual implica que sus ejecutorias sobrepasan por mucho lo esperado y contribuyen a proyectar un alto nivel de calidad". La querellante también expresó que "el

compromiso y dedicación" de la Jueza Pagani Padró se "refleja [en] el trabajo de calidad que ha realizado".

Por su parte, la Jueza Pagani Padró aceptó en el acuerdo suscrito que el trámite en el caso *Rodríguez Casillas* "no [fue] un ejemplo de la forma en que debe desempeñar su labor". Reconoció, "que un término de diez (10) años en dictar sentencia no es un término razonable". Además, aceptó que aun cuando las circunstancias del caso podrían explicarlo, es "una situación que no debe repetirse". Finalmente, expresó ser consciente de la importancia y la necesidad de resolver los casos con prontitud y de solicitar recursos de la Oficina de Administración de los Tribunales para evitar dilaciones injustificadas. El caso quedó sometido a la consideración de la Comisión para su adjudicación final.

El 24 de noviembre de 2009 la Comisión, luego de "analizar las estipulaciones de hechos, la prueba documental estipulada por ambas partes y el contenido de la 'Propuesta Transaccional'", emitió su informe. En éste exoneró a la Jueza Pagani Padró de haber incurrido en "conducta constitutiva de infracción a los Cánones de Ética Judicial por la dilación en resolver el caso *Rodríguez Casillas* por tratarse de un solo caso en el historial profesional de ésta". Se indicó además lo siguiente:

> "[e]l caso *Rodríguez Casillas* fue uno sumamente complejo, de abundante prueba documental y testifical, el cual se celebró de forma fragmentada durante el transcurso de tres años. Además debemos señalar que del expediente no se desprende que se haya realizado gestión administrativa dirigida a dar

seguimiento a la resolución del caso despúes que el expediente fue enviado al Tribunal de San Juan."

El Comisionado Asociado, licenciado Carlos Ramos González, emitió un voto explicativo. En éste indicó que, a su juicio, la tardanza de un juez en adjudicar finalmente un caso "no constituye de por sí una violación a la ética judicial". Ahora bien, también reconoció que "una tardanza *indebida* podría constituir una violación" a las normas éticas judiciales. (Énfasis en el original). Sobre este caso en particular, el Comisionado Asociado Ramos González indicó lo siguiente: "la totalidad de las circunstancias de este caso *apuntan* hacia una violación a la ética por una tardanza indebida al resolver un caso". (Énfasis en el original). No obstante, concluyó que ante la ausencia de expresión previa de parte de este Tribunal respecto a este asunto, tenía dudas "si en efecto queda satisfecho el *quantum* de prueba requerido en un proceso como éste …". Coincidió con la Comisión no obstante, en que el historial de servicios de la Jueza Pagani Padró sirve de balance y contrapeso a cualquier posible sanción por lo que consideró correcto que no se le sancionara.

El 15 de octubre de 2009 la Directora Administrativa de los Tribunales solicitó reconsideración de la determinación de la Comisión, a lo cual se opuso la parte querellada. El asuntó quedó así sometido ante nuestra consideración.

## II

Habida cuenta de que en este caso no se celebró una vista en su fondo y que las determinaciones de hechos de la

Comisión se basaron, sustancialmente, en las estipulaciones de hechos de ambas partes según recogidas en el Informe de conferencia así como en la prueba estipulada, debemos repasar tales determinaciones de hechos, previo a atender los méritos de la controversia planteada. A continuación, los más relevantes:

1. La investigación administrativa que dio base a la querella de epígrafe comenzó con la presentación de una queja juramentada contra la Jueza Carmen Heydee Pagani Padró (la Jueza Pagani Padró o la Jueza) por los señores Ángel Alberto Pagán Ramos, Ana Hilda García Santana y Reneé Pagán García el 12 de marzo de 2008, quienes comparecieron como demandantes en el caso de *María Rodríguez Casillas y Otros vs. Dr. Fulano Hernández y Otros*, Civil Núm. FDP-90-0309.

2. La demanda en el caso de *María Rodríguez Casillas y Otros vs. Dr. Fulano Hernández y Otros*, Civil Núm. FDP-90-0309, se presentó en la Secretaría del Tribunal de Primera Instancia en Carolina el 18 de junio de 1990.

     . . . .

4. La Hon. Carmen Heydee Pagani Padró fue nombrada Jueza Superior el 25 de enero de 1990.

5. La [Jueza] fue designada como Jueza Superior del Tribunal de Primera Instancia de Mayagüez el 12 de febrero de 1990, donde estuvo asignada hasta el 14 de marzo de 1991.

6. Efectivo el 15 de marzo de 1991 la [Jueza] Pagani Padró fue trasladada al Tribunal de Primera Instancia de Carolina.

     . . . .

8. Efectivo el 22 de abril de 1997 la [Jueza] fue trasladada al Tribunal de Primera Instancia de San Juan, donde actualmente continúa asignada.

     . . . .

15. El 5 de abril de 1991 surge [su] primera intervención … en el caso *María Rodríguez Casillas y Otros vs. Dr. Fulano Hernández y Otros*, Civil Núm. FDP-90-0309 en la Sala 401.

16. … [L]a vista en su fondo del caso … comenzó el 25 de octubre de 1993 y culminó el 10 de octubre de 1996.

17. La vista en su fondo se extendió por más de 30 días, donde la prueba documental y testifical fue voluminosa, se presentaron un total de 13 peritos médicos, 18 médicos que intervinieron en el tratamiento brindado al occiso y/o que testificaron sobre el funcionamiento de las facilidades hospitalarias en las que el occiso fue atendido y 17 testigos adicionales.

18. Finalizado el desfile de prueba el 10 de octubre de 1996, [la Jueza] les requirió [a las partes] someter por Memorandos de Determinaciones de Hechos.

. . . .

22. El 6 de marzo de 1997 quedó sometido para resolución el caso de *María Rodríguez Casillas y Otros vs. Dr. Fulano Hernández y Otros*, Civil Núm. FDP-90-0309.

23. El 14 de marzo de 1996 la Jueza … fue notificada que sería relevada de Sala del 1 al 30 de abril de 1996 para resolver los casos que tenía sometidos y pendientes de resolver.

. . . .

25. Mediante carta de 4 de marzo de 1997 se notificó a la Jueza … que sería relevada de Sala del 10 al 31 de marzo de 1997 para que resolviera los casos que tenía sometidos y pendientes de resolver, además se le instruyó que tenía que reportarse al Instituto de Estudios Judiciales.

26. Mediante carta de 9 de abril de 1997, se notificó a la Jueza … que efectivo el 22 de abril de 1997 sería trasladada como Jueza Superior al Tribunal de San Juan.

27. Mediante carta de 9 de abril de 1997 a su vez se [le] notificó … que continuaría relevada de Sala para finalizar los casos que tenía sometidos y pendientes de resolver de las Salas de Carolina y Mayagüez.

28. [S]e le requirió … someter un inventario de casos al Juez Administrador de la Región de Carolina sobre los casos que traería consigo para resolver en el Instituto de Estudios Judiciales.

. . . .

31. Al momento del traslado [a San Juan] de la parte querellada, … el expediente judicial del caso *María Rodríguez Casillas y Otros vs. Dr. Fulano Hernández y Otros*, Civil Núm. FDP-90-0309, permaneció por instrucciones de la Jueza Pagani Padró, bajo la custodia de [la] Secretaría del Tribunal de Carolina debido a que el expediente era voluminoso.

. . . .

34. El 14 de junio de 2000 la Jueza Maritza Ramos Mercado [(Jueza Administradora de la Región Judicial de Carolina)] [ordenó] el traslado al Tribunal de San Juan del expediente judicial del caso *María Rodríguez Casillas y Otros vs. Dr. Fulano Hernández y Otros*, Civil Núm. FDP-90-0309, para acción correspondiente.

35. El 27 de diciembre de 2000 el Lcdo. Luis R. Mellado González[17] remitió a la atención de la Jueza …, en respuesta a una solicitud de ésta, copia de su escrito titulado: "Relación de Hechos Pertinentes a la Reclamación de la Parte Demandante y a la Configuración de Responsabilidad Solidaria de los Demandados" y disco WP 5.1 en que se encontraba grabado el escrito, el cual había sido sometido a la atención de la Jueza … el 5 de marzo de 1997.

36. El 19 de septiembre de 2005 el Lcdo. Luis R. Mellado González presentó escrito en que solicitó resolver el caso *María Rodríguez Casillas y Otros vs. Dr. Fulano Hernández y Otros, supra*, lo antes posible.

. . . .

38. En diciembre de 2005 la Jueza … dialogó en corte abierta con el Lcdo. Luis F. Montijo Colón[18], quien se encontraba en el Tribunal en otro caso, para que se comunicara con todos los abogados en el caso de *María Rodríguez Casillas y Otros vs. Dr. Fulano Hernández y Otros, supra*, y les preguntara la fecha que más les convenía a ella (sic) notificar la Sentencia.

39. El consenso entre los abogados y que le fue notificado a la Jueza … era que notificara la Sentencia después del 16 de enero de 2006.

---

[17] El Lcdo. Luis R. Mellado González era el abogado de los demandantes en el caso *Rodríguez Casillas*.
[18] El Lcdo. Luis F. Montijo Colón fue el abogado de una de las partes codemandadas en el caso *Rodríguez Casillas*.

40. A petición de la Jueza … Pagani Padró, el 11 de enero de 2006 el Lcdo. Luis F. Montijo Colón se comunicó con los otros abogados en el caso … para coordinar una reunión con la Jueza ….

41. El propósito de la reunión … era auscultar con los abogados la posibilidad de alcanzar una transacción en el caso.

42. El 27 de junio de 2006 se sostuvo una reunión en el Tribunal de San Juan con la Jueza … [y los abogados de las partes. Éstos no llegaron a un acuerdo.]

   . . . .

44. El 19 de julio de 2006 … [se] sostuvo en el Tribunal de San Juan una segunda reunión … para auscultar la posibilidad de una transacción, pero la misma no se logró.

   . . . .

46. Las reuniones sostenidas el 27 de junio y el 19 de julio de 2006 se coordinaron a petición de la Jueza … Pagani Padró, para dialogar [con los abogados de las partes] sobre un posible acuerdo transaccional.

47. El 23 de febrero de 2007 el Lcdo. Luis R. Mellado González radicó "Moción Urgente para que se Dicte Sentencia" ….

48. De la oficina de la Jueza … se comunicaron con la oficina de la Lcda. Sigrid López González[19] para que le remitieran copia del Memorando de Determinaciones de Hechos preparado por la [licenciada] … en enero de 1997 como representante legal de la Universidad de Puerto Rico.

49. El 2 de mayo de 2007 … se notificó por correo electrónico a la oficina de la Jueza … Pagani Padró el Memorando de Determinaciones de Hechos preparado por la Lcda. Sigrid López González ….

50. El 4 de mayo de 2007 notificada a las partes el 14 de mayo de 2007 la Jueza Carmen Heydee Pagani Padró dictó Sentencia en el caso *María Rodríguez Casillas y Otros vs. Dr. Fulano Hernández y Otros*, Civil Núm. FDP-90-0309.

   . . . . .

---

[19] La Lcda. Sigrid López González era la abogada de la Universidad de Puerto Rico en el caso *Rodríguez Casillas,* parte codemandada en este caso.

52. La queja que dio inicio a la querella de epígrafe … fue presentada aproximadamente diez (10) meses luego de la notificación de la Sentencia.

Una vez repasados detenidamente los hechos que le sirven de trasfondo a la controversia ante nuestra consideración, debemos considerar la normativa jurídica aplicable.

III

A

Al acercarnos al asunto que está ante nuestra consideración, a saber, cuándo la dilación en resolver un caso sometido se configura contraria a la exigencia ética de diligencia que tiene todo juez, advertimos que éste es un tema sobre el cual no nos habíamos expresado en el pasado. Somos conscientes sin embargo, que el tema de la lentitud en la administración de justicia es un tema que ha suscitado, de siempre, innumerables críticas y severos comentarios. "Si las funciones principales que se asignan al Derecho en una sociedad democrática son las de garantizar la libertad, la justicia y la seguridad, es evidente que éstas resultarán" en letra muerta, si el acceso efectivo de los particulares a los órganos encargados de su administración "no va acompañado de la específica garantía de una solución pronta y rápida de la cuestión litigiosa o del asunto controvertido que a ellos se someta". M. Marín Castán, *La polémica cuestión de la determinación del "plazo razonable" en la administración de justicia*, 10 Revista Española de Derecho Constitucional 215 (1984). *Véase*, I. Diez Picazo, *Poder Judicial y responsabilidad, La Ley,* 1990, pág. 96. *Véanse además*, S. Benham, *Note: Judicial Purgatory: Strategies for Lawyers*, 58

Drake L. Rev. 585 (2010); *Seminario sobre la demora judicial*, 77 Rev. Jur. U.P.R. Núm. 4 (2008); R. Miner, *Judicial Ethics in the Twenty-First Century: Tracing Trends*, 32 Hofstra L. Rev. 1107 (2004); C. Stewart, *Abuse of Power & Judicial Misconduct: A Reflection on Contemporary Ethical Issues Facing Judges*, 1 U. St. Thomas L. J. 464 (2003); B. Selya, *Thoughts from the Bench: The Confidence Game: Public Perceptions of the Judiciary*, 30 New Eng. L. Rev. 909 (1996).

Señalamientos como ese han provocado que los Poderes Judiciales de Iberoamérica —entre ellos la Rama Judicial del Estado Libre Asociado de Puerto Rico— elaboraran varias declaraciones a propósito de atender las dificultades que enfrentan las personas cuando pretenden hacer valer sus derechos ante los tribunales. Por ejemplo, han concluido que "[t]odas las personas tienen derecho a una tramitación ágil de los asuntos que le afecten, que deberán resolverse dentro del plazo legal y a conocer, en su caso, el motivo concreto del retraso". Art. 20, Carta de Derechos de las Personas ante la Justicia en el Espacio Judicial Iberoamericano, VII Cumbre Iberoamericana de Presidentes de Cortes Supremas y Tribunales Supremos de Justicia (2002). Así como han afirmado que "[t]odas las personas tienen derecho de acuerdo con arreglo a la normativa interna a exigir responsabilidades por error judicial o por el funcionamiento anormal de la Administración de Justicia. *Id.*, Art. 19. *Cf.* Exposición de Motivos, Reglas de Brasilia sobre Acceso a la Justicia de las Personas en condición de Vulnerabilidad, XIV Cumbre Judicial

Iberoamericana (2008) ("El sistema judicial se debe configurar, y se está configurando, como un instrumento para la defensa efectiva de los derechos de las personas en condición de vulnerabilidad. Poca utilidad tiene que el Estado reconozca formalmente un derecho si su titular no puede acceder de forma efectiva al sistema de justicia para obtener la tutela de dicho derecho.").

La garantía del disfrute pleno de los derechos a través de recursos efectivos ante los foros judiciales, forma parte incluso de uno de los documentos que inspiró nuestra Constitución: la Declaración Universal de Derechos Humanos. *Véanse* Arts. 8 & 10 de la Declaración Universal de Derechos Humanos; *López Vives v. Policía de P.R.*, 118 D.P.R. 219, 226 (1987). Por otro lado, la dilación irrazonable de los procedimientos judiciales —tanto en materia civil como penal— se considera una violación de derechos humanos en los sistemas regionales Interamericano, Europeo y Africano. *Véanse* Arts. 7.5, 8.1, 25.1 de la Convención Americana sobre Derechos Humanos; Art. 6.1 del Convenio para la Protección de los Derechos Humanos y de las Libertades Fundamentales; Art. 7 de la Carta Africana sobre los Derechos Humanos y de los Pueblos.

A los fines de evaluar la razonabilidad de la duración de los procedimientos, la Corte Europea de Derechos Humanos ha elaborado un examen que debe aplicarse caso a caso, y que toma en consideración las circunstancias particulares atientes a cada una de las controversias, para concluir si ha sido razonable o no una dilación. Este análisis requiere

ponderar la naturaleza del pleito; las actuaciones de las autoridades del Estado, así como del peticionario; y los intereses que se afectan por la dilación. *Véanse*, Corte Eur. D.H., *Rumpf v. Germany*, Núm. 46344/06, § 41, 2 de septiembre de 2010; Corte Eur. D.H., *Frydlender v. France* [GS], Núm. 30979/96, § 43, ECHR 2000-VII. La jurisprudencia de esta Corte sobre el tiempo razonable de los procedimientos judiciales, además de ser abundante, se ha convertido en un importante referente para otros foros responsables de velar por los derechos fundamentales de las personas. *Véase* Frédéric Edel, *The length of civil and criminal proceedings in the case-law of the European Court of Human Rights*, Council of Europe Publ., 2da ed., 2007; Corte I.D.H., *Suárez Rosero v. Ecuador*, Sentencia de 12 de noviembre de 1997, § 72, Serie C Núm. 35; Corte I.D.H., *Genie Lacayo v. Nicaragua*, Sentencia de 29 de enero de 1997, § 77, Serie C Núm. 30.

A la luz de la totalidad de las circunstancias, la Corte Europea de Derechos Humanos ha catalogado como irrazonable: un periodo de cuatro años durante el cual una Corte Suprema Administrativa se reservó su determinación; periodos de dos años y ocho meses, así como dos años y un mes, que transcurrieron antes que dos cortes de distrito dictaran sus sentencias; y un periodo de dos años que tardara una corte de primera instancia en emitir su fallo. *De Moor v. Belgium*, 23 de junio de 1994, § 67, Series A Núm. 292-A; *Biondi v. Italy*, 26 de febrero de 1992, § 18, Series A Núm. 228-C; *Shacolas v. Cyprus*, Núm. 47119/99, § 123, 4 de mayo de 2006; *Unión Alimentaria Sanders S.A. v. Spain*, 7 de julio de 1989, § 36,

Series A Núm. 157. *Véanse además*, sobre la inexcusabilidad de dilaciones irrazonables provocadas por un alto volumen de trabajo, *Thlimmenos v. Greece* [GS], Núm. 34369/97, §§ 61-62, ECHR 2000-IV; *Mavronichis v. Cyprus*, 24 de abril de 1998, § 39, *Reports of Judgments and Decisions* 1998-II.

B

En lo que nos concierne directamente, considero que nuestro norte debe ser instaurar el ejercicio responsable y diligente del Poder Judicial como un valor preeminente para el estado de derecho. Ese ejercicio responsable supone que en el descargo de sus funciones, los jueces actúen con competencia y aptitud, independencia, diligencia, imparcialidad e integridad. Ello a su vez requiere, como contrapunto, un riguroso régimen disciplinario. En este rigor, los Cánones de Ética Judicial pretenden guiar el comportamiento de los miembros de la judicatura para hacer realidad esa expresión deontológica, fomentando de esta forma el respeto y la confianza del pueblo en su sistema judicial.

El Preámbulo de los Cánones de Ética Judicial declara que: "[c]orresponde al poder judicial la función de interpretar las leyes y **resolver los casos y las controversias de forma rápida, eficiente,** sensible y justa". 4 L.P.R.A. Ap. IV-B (Énfasis nuestro). Esta declaración general nos sirve de guía en la interpretación de las disposiciones específicas del cuerpo de normas éticas. Hemos enfatizado en el pasado que es labor indelegable de "los tribunales de primera instancia … velar y garantizar que los procedimientos y **asuntos se ventilen sin demora, lo**

**cual constituye la política judicial establecida por este foro con miras a lograr una justicia rápida y eficiente**". *Heftler Const. Co. v. Tribunal Superior*, 103 D.P.R. 844, 846 (1975) (Énfasis nuestro). *Véase también*, *Fine Art Wall Paper v. Wolff*, 102 D.P.R. 415 (1974).

Por otro lado, el Canon 4 de Ética Judicial le impone a todos los jueces la obligación de cumplir "cuidadosa y diligentemente las obligaciones administrativas que les imponen las leyes y los reglamentos aplicables a la Rama Judicial". 4 L.P.R.A. Ap. IV-B, C.4. En cuanto al ámbito del ejercicio de sus funciones judiciales, el Canon 8 de Ética Judicial exige que los jueces sean "laboriosos, prudentes, serenos e imparciales." 4 L.P.R.A. Ap. IV-B, C.8.

El Canon 17 de Ética Judicial plasma el deber de diligencia del juez al exigirle que sea "diligente[…] en la administración del proceso judicial de los asuntos sometidos ante su consideración …".[20] 4 L.P.R.A. Ap. IV-B, C.17. Así debe ser. Juzgar, después de todo, es una actividad obligatoria y consustancial con la esencia misma de ser instructor de causas. R. Hernández Marín, *Las obligaciones básicas de los jueces*, Madrid, Marcial Pons Ediciones Jurídicas y Sociales, S.A., 2005, pág. 20.

---

[20] La responsabilidad ética que surge de éste y los otros cánones citados comprende las distintas etapas del proceso decisorio, en las cuales los jueces deben utilizar de manera efectiva los mecanismos que tienen disponibles de forma tal que se viabilice la solución justa, rápida y económica de las controversias ante su consideración.

Así también, las Reglas para la Administración del Tribunal de Primera Instancia de Puerto Rico regulan los procesos administrativos en nuestros tribunales. Éstas deben interpretarse "de forma tal que en la administración del sistema judicial **se garantice en todo momento un servicio rápido y eficiente … a los ciudadanos**". Regla 2 de las Reglas para la Administración. (Énfasis nuestro). En este tenor, la Regla 24(a) ordena lo siguiente: "**Los casos contenciosos** atendidos en sus méritos y las mociones de sentencia sumaria **se resolverán dentro de los noventa (90) días a partir de la fecha en que queden sometidos para adjudicación.** … No obstante, [podrá extenderse el término], razonablemente, cuando la naturaleza del asunto o alguna causa extraordinaria lo hagan necesario." (Énfasis nuestro).

De lo anteriormente expuesto queda claro que nuestro ordenamiento propulsa la solución rápida y eficiente de los asuntos ante los tribunales estableciendo para ello, en casos contenciosos sometidos para adjudicación, un término de 90 días para dictar sentencia. Y es que la formulación de la decisión que pone fin al litigio, es "la culminación del proceso decisorio, es la que merece el nombre de 'acción de juzgar', en el sentido de resolver el litigio 'decretando' o 'dictando' algo, o 'sentenciando'". Hernández Marín, *op. cit.*, pág. 20.

El deber de diligencia del juez del que habla el Canon 17 tiene que conjugarse con el término provisto en esta Regla 24(a). Es por ello que este término es obligatorio para todos los jueces del Tribunal de Primera Instancia. Subyace

a este plazo el reconocimiento de que una justicia tardía equivale a la denegación de la justicia misma.  "Con acierto se sostiene que es nota constitutiva de la justicia el tiempo oportuno, por lo que una dilación en la respuesta judicial puede ser una fuente de injusticia."  R.L. Vigo, *Ética y responsabilidad judicial*, Rubinzal-Culzoni Editores, 1era ed., Buenos Aires, pág. 38.

Ello no obstante y partiendo de la premisa de que un procedimiento judicial conlleva la realización de sucesivos trámites por distintos actores, los cuales muy a menudo son incompatibles con una respuesta judicial rápida y tempestiva, el ordenamiento también admite un aplazamiento razonable del término reglamentario, como se desprende del propio texto de la Regla 24(a), *in fine,* de las Reglas para la Administración.  A fin de cuentas, lo que se persigue es que el proceso sea uno **sin dilaciones indebidas**, es decir, un proceso que se desarrolle en tiempo razonable atendiendo a las exigencias de una buena administración de la justicia según las circunstancias particulares del caso.

El criterio de razonabilidad que demanda la Regla 24(a) de las Reglas para la Administración es, de suyo, un concepto indeterminado que requiere, para su concreción, la aplicación de criterios objetivos.  Así, para considerar si el aplazamiento del término de 90 días ha sido razonable, tenemos que ponderar varios factores, a saber: la complejidad del litigio, la conducta de los litigantes, las actuaciones de las autoridades judiciales, la naturaleza de los reclamos de los litigantes, y finalmente, el lapso de tiempo aplazado.

Si, realizado ese análisis, se concluye que el retraso es irrazonable, nos encontramos frente una dilación indebida que es contraria a las obligaciones éticas del juez. De igual forma, una dilación extrema en la resolución definitiva del caso, ante la totalidad de las circunstancias, en ocasiones podría conllevar una violación ética de por sí.

El primero de los criterios antes mencionados se refiere a la complejidad de los hechos o la complejidad jurídica del asunto que pende ante el tribunal. No puede existir complejidad en los hechos cuando éstos resultan evidentes o de fácil corroboración. Tampoco puede concluirse que se trata de un caso que revista complejidad jurídica si se trata de la aplicación de normas sencillas y claras de derecho sustantivo.

Por otro lado, el comportamiento de las partes -es decir, de los litigantes y los funcionarios judiciales- es otro de los criterios a ponderar. La actitud del litigante debe ser siempre diligente tanto en la tramitación del proceso como en la denuncia de las dilaciones. *Véase*, Canon 12, Código de Ética Profesional. 4 L.P.R.A. Ap. IX. Véase además, aunque en otro contexto, *Banco de Desarrollo Económico v. AMC Surgery*, 157 D.P.R. 150, 157 (2002). Si su conducta ha sido obstruccionista, hecho un reclamo de dilación injustificada, éste adolecerá de ineficacia.

Igualmente, los jueces deben actuar con diligencia y prontitud por imperativo de los Cánones de Ética Judicial así como por las obligaciones impuestas en las Reglas para la Administración. Al considerar un reclamo de dilación

indebida hay que evaluar si la presunta tardanza es el resultado de la acción o de la inacción del magistrado. Cabe destacar que el volumen de trabajo que pese sobre el juez no puede ser justificación para que la resolución final de un caso se retrase irrazonablemente pues subsiste siempre, el deber de diligencia de finiquitar los asuntos sometidos dentro del término provisto en la Regla 24(a) de las Reglas para la Administración. Ahora bien, se ha reconocido que la carga de trabajo puede muy bien considerarse como un factor mitigante. Para que ello sea así, el juez debe haber tomado medidas afirmativas para atender los asuntos atrasados, atenuando de esta forma los efectos perjudiciales que el retraso de los asuntos ante su consideración pueda causar. J. Alfini, S. Lubet, J. Shaman, C. Geyh, *Judicial Conduct and Ethics*, Lexis Nexis, 4th Edition, sec. 6.02D, págs. 6-19 ("heavy workload generally has been considered only in mitigation and not as a complete defense to failure of prompt disposition charges.")[21]

El examen de la alegada dilación indebida quedará matizado por la naturaleza de los reclamos de los litigantes que se vean afectados por la duración del procedimiento. De manera que el análisis será más riguroso cuando el tribunal hubiera tenido ante su consideración reclamaciones importantes que ameritaran una pronta solución. Súplicas de derechos fundamentales, relaciones de filiación y protecciones laborales, son sólo algunas de las reclamaciones

---

[21] Hay que distinguir entre un retraso injustificado y aquel derivado de factores estructurales o coyunturales ajenos a la responsabilidad del juez.

que merecen especial atención del juzgador, dentro del deber general de diligencia que permea el mandato judicial.

Por último, habrá que considerar el lapso de tiempo del retraso. Evidentemente no es equiparable un retraso de meses, en la resolución de un caso sometido para su adjudicación, a uno de años.

Frente a un reclamo como el que nos ocupa en esta ocasión, venimos obligados a evaluar la conducta del magistrado tomando en consideración la interacción de las normas éticas y reglamentarias antes discutidas.

IV

En este caso la querellada ha aceptado que el término de diez años para dictar sentencia en *Rodríguez Casillas*, "no es un término razonable", ni es "un ejemplo de la forma en que debe desempeñar su labor". Ello no obstante, la Comisión concluyó que no se configuró una violación ética por cuanto se trató de una situación aislada en el historial profesional de la jueza, además de que el caso fue complejo y de que la Administración de Tribunales no realizó gestión administrativa alguna dirigida a atender este asunto. La posición de la querellada es, esencialmente, igual a la que esgrime la Comisión. La Administración de Tribunales por el contrario asevera, que "la aceptación y reconocimiento de la propia parte querellada" de que el término que se tomó para resolver el caso no fue razonable, obliga a concluir que ésta incurrió en violación a la Regla 24(a) y por lo tanto, en violaciones de carácter ético que requieren se le sancione.

Hemos indicado en el pasado que no estamos obligados a acoger en su totalidad el informe que nos remite la Comisión, pues lo podemos rechazar totalmente o sólo una parte, como también lo podemos modificar. *In re Hon. Maldonado Torres*, 152 D.P.R. 858 (2000); *In re Moreira Avillán*, 147 D.P.R. 78, 86 (1998).

Un examen minucioso, objetivo e imparcial del informe que nos sometiera la Comisión, así como de la extensa prueba documental que consta en autos, nos mueve a, vía excepción, considerar que se deben modificar las determinaciones de la Comisión por lo que no acogeríamos su conclusión de que la querellada no incurrió en conducta contraria a los postulados éticos que rigen el desempeño judicial. Debemos reconocer no obstante, que el asunto tratado por la Comisión no había sido atendido por este Tribunal en el pasado, por lo que no se contaba con una expresión clara sobre cuándo y bajo qué circunstancias la tardanza en dictar sentencia en un caso se configuraba como una violación de la ética judicial.

Como indicamos, a la querellada le tomó **diez años dictar sentencia en un caso que tenía sometido ante su consideración.** Considero que ese término, de por sí, es irrazonable.[22] Si bien no todo incumplimiento del plazo de

---

[22] Todo abogado que haya litigado sabe que en la litigación de casos complejos, la mayor dilación ocurre durante la etapa previa a la vista en su fondo o juicio. El emplazamiento de múltiples partes, el descubrimiento de prueba documental, la confección y contestación de interrogatorios, la toma de diversas deposiciones a las partes, la preparación y presentación de mociones dispositivas y sus respectivas réplicas etc., son todos asuntos que dilatan el comienzo del juicio en su fondo. En casos complejos o de múltiples partes, este periodo puede

90 días es constitutivo de falta ética, pues éste admite su aplazamiento, un retraso de diez años no es razonable. Una dilación de esa magnitud implica, de suyo, una violación ética salvo que se trate de circunstancias extraordinarias, como por ejemplo, de carácter estructural que impidan el desempeño de la función judicial con normalidad.

Coincidimos con la Comisión cuando concluye que el caso ventilado ante la sala de la Jueza Pagani Padró fue uno complejo por virtud de la voluminosa prueba documental y testifical presentada, y que se celebró de forma fragmentada durante el transcurso de tres años. Todo ello, ciertamente, dificulta la tarea del juez y hace más trabajoso la función de dictar sentencia. Ello sin embargo, no es suficiente para justificar una tardanza de diez años para dar por concluido un litigio. **Una década es un período excesivamente largo para tener bajo consideración un caso ya sometido.**

En casos como éstos es imprescindible que el magistrado lleve a cabo gestiones afirmativas para solicitar ayuda de la Administración de Tribunales para poder concluir el asunto en un lapso de tiempo razonable. La Administración a su vez, viene obligada a relevar de sala al magistrado o a asignarle recursos humanos adicionales que le permitan al juez resolver

---

durar varios años. Ahora bien, también sabemos, que una vez se concluye el juicio, el periodo de espera por la sentencia es menor que aquél que transcurrió desde que se presentó la demanda hasta que comenzó el juicio.

En este caso, desde que se presentó la demanda hasta que comenzó el juicio transcurrió un periodo de tres años. Desde que concluyó el juicio y el caso quedó sometido para que se dictase sentencia, transcurrieron diez años. ¿Cómo es posible que ello se pueda justificar?

con prontitud el caso o los casos sometidos. Pero no debemos perder de vista que la responsabilidad primaria recae, necesariamente, sobre el juez, pues es éste quien tiene la obligación ética de resolver con diligencia los casos sometidos a su consideración. "El derecho impone a los jueces … la obligación de juzgar …." Hernández Marín, *op. cit.*, pág. 20.

No surge del expediente de este caso que la Jueza Pagani Padró hubiese solicitado de la Administración de Tribunales ser relevada de sala para atender este caso y disponer del mismo, o que hubiese solicitado la asistencia de personal adicional con este propósito. Lo que sí surge del expediente es que en dos ocasiones después de que este caso quedó sometido para resolución, la Jueza Pagani Padró fue relevada de Sala por la Administración a petición del Juez Administrador de la Región Judicial de Carolina, para que ésta atendiese los casos que tenía sometidos. Este caso sin embargo, no fue uno de los que atendió.

Una lectura somera de la sentencia desestimatoria dictada en este caso pone de manifiesto que la querellada adoptó, casi en su totalidad y *verbatim*, el memorando de determinaciones de hechos sometido por la licenciada López González.[23] Este documento fue sometido ante la consideración del tribunal a petición de la jueza como

---

[23] La práctica de solicitar proyectos de sentencia o de determinaciones de hechos no es una práctica impropia. El Canon 9 de los Cánones de Ética Judicial autoriza tal solicitud como "instrumento auxiliar para los magistrados del país sobrecargados y agobiados de una carga enorme de causas judiciales". *Báez García v. Cooper Labs. Inc.*, 120 D.P.R. 145, 157 (1987).

mecanismo auxiliar para la resolución del caso, pero no fue sino hasta diez años más tarde que se acogió.

Por otro lado, la Comisión concluyó que la tardanza de la jueza en resolver *Rodríguez Casillas,* fue una actuación aislada "en el historial profesional" de la Jueza Pagani Padró. No podemos coincidir con esta conclusión de la Comisión. Surge del expediente ante nuestra consideración, como se indicó, que la Jueza Pagani Padró mientras estuvo asignada al Tribunal de Primera Instancia de Carolina, fue relevada de sala en tres ocasiones a petición del Juez Administrador de la región, a saber: en mayo de 1996 (desde el 1 de mayo hasta el 21 de mayo de 1996), en marzo de 1997 (del 10 de marzo al 31 de marzo de 1997), y en abril de 1997 (desde el 9 de abril hasta el 21 de abril de 1997). Las cartas enviadas a la Jueza Pagani Padró claramente expresan que el propósito del relevo era que ésta atendiera casos que tenía sometidos y pendientes de resolución. En la última de estas comunicaciones se señala específicamente su relevo, el cual era para atender casos "pendientes de resolver de la Sala de Carolina y Mayagüez". Recordemos que ésta estuvo asignada a Mayagüez hasta marzo de 1991, por lo que seis años más tarde todavía tenía casos sometidos de dicha región judicial sin resolver. Todo ello, a nuestro juicio, apunta hacia un patrón de tardanza en su función adjudicativa y una desatención a su deber de diligencia.

Considero, no obstante, que no es indispensable establecer un patrón de tardanza en la resolución de casos para considerar que ha habido una violación a los Cánones de

Ética Judicial por tardanza indebida. Puede ocurrir que la tardanza de un solo caso sea suficiente para configurarse una violación ética. Ello dependerá de los hechos particulares del caso y del lapso de tiempo de la demora.

Por otro lado, destacamos que por instrucciones de la Jueza Pagani Padró, el expediente del caso *Rodríguez Casillas* se quedó en la Secretaría del Tribunal de Primera Instancia, Sala de Carolina, cuando ella fue trasladada a San Juan en abril de 1997. A esos efectos, en la carta que ésta le enviara al Juez Administrador de la Región Judicial de Carolina detallando los casos que llevaría consigo a San Juan, específicamente se indicó que el expediente del caso *Rodríguez Casillas,* el cual tenía "una voluminosa prueba documental … habrá de permanecer bajo la custodia de Secretaría **hasta tanto llegue el momento de resolverlo**". (Énfasis nuestro).

Así, cualquier moción que se presentara en Carolina en el caso *Rodríguez Casillas* era luego remitida por la Secretaria Regional a la Jueza Pagani Padró al Tribunal de San Juan, para su atención. Ciertamente, ésta no es la manera más eficiente de trabajar los casos. No albergamos duda de que este hecho contribuyó al trámite azaroso de este caso. Hay que enfatizar que fue la propia Jueza Pagani Padró quien decidió que el expediente permanecería en Carolina, "hasta tanto llegue el momento de resolverlo". No fue sino hasta junio de 2000 que la Jueza Administradora de Carolina remitió al Tribunal de San Juan el expediente de este caso.

La Comisión afirmó en su Informe que "después que el caso se encontraba sometido en sus méritos, la Jueza Pagani Padró continuó realizando gestiones para auscultar la posibilidad de que las partes alcanzaran una transacción en el caso". Lo cierto es que las gestiones que llevó a cabo la Jueza Pagani Padró sobre este particular ocurrieron luego de que en septiembre de 2005 el licenciado Mellado González, abogado de los demandantes, presentara una moción titulada "Moción Informativa" en la cual solicitaba que el caso fuese resuelto lo antes posible. En ese momento, ya habían transcurrido ocho años desde que el caso quedó sometido para resolución. A nuestro juicio por lo tanto, las reuniones sostenidas con la jueza a principios de 2006 no tienen el alcance y el efecto que la Comisión les imparte. Ya en ese momento había transcurrido un periodo de tiempo irrazonable desde que el caso quedó sometido sin que se hubiese dictado sentencia.

No hay duda que el abogado de la parte demandante pudo haberle llamado la atención a la jueza de que el caso languidecía, mucho antes de lo que lo hizo, a saber: ocho años después de que quedó sometido. Pero esa falta de diligencia del abogado para con, a fin de cuentas, los intereses de su cliente, no supone, como intima la mayoría, que opere para liberar a la magistrada del cumplimiento de una obligación de carácter ético. Las obligaciones éticas son personalísimas y no dependen de lo que otro haga o deje de hacer. La ética judicial tiene como objeto formal "establecer qué es lo que corresponde exigirle al juez en

orden a convertirlo en el mejor juez posible" para beneficio de la sociedad a la que le sirve. R.L. Vigo, *op. cit.,* pág. 15.

Asimismo, estimo alarmante que la mayoría del Tribunal exprese que la mera dilación en dictar sentencia no puede constituir violación de deber ético alguno y que, por ello, limite la inferencia de la Comisión de Disciplina Judicial para atender querellas fundadas en dicho retraso. La Opinión del Tribunal se esfuerza por justificar su determinación lanzando algunos "factores exógenos a los jueces" que "podría[n]" ser los causantes de la demora, entre estos: la sobrecarga de trabajo, la complejidad de los casos, y que las partes no le recuerden al juez cumplir con sus deberes éticos, entiéndase, resolver con prontitud. No parece coherente tal razonamiento. La posición adoptada por la mayoría del Tribunal, de negarse a pasar juicio sobre actuaciones que presentan claras desviaciones de los deberes éticos de los miembros de la judicatura, porque existe *la posibilidad* de que las mismas estén justificadas, a mi juicio es insostenible. En la medida en que la mayoría del Tribunal se niega examinar la conducta de un juez que prolonga por años la tan esperada Justicia, este Foro en efecto crea una regla *per se* bajo la cual quedan justificadas todas las dilaciones en las que incurran los magistrados para dictar sentencia.

La tardanza incurrida en este caso no permitió tutelar de manera efectiva el derecho de las partes a recibir pronta satisfacción. La dilación tuvo como resultado que perdurara

la angustia de unos familiares por un periodo de tiempo insostenible. Pero además, y más importante, empañó la imagen de eficacia de la Rama Judicial, lo que tiene como corolario que aumente el reproche ciudadano. El respeto de la ciudadanía para con la Judicatura puertorriqueña "no puede simplemente exigirse, sin más. Se lo tienen que ganar los miembros [de la Judicatura] con su proceder." E. Rivera Ramos, Poder sin legitimidad, www.elnuevodia.com/columna-podersinlegitimidad-819625.html. Cuando no exigimos de nuestros jueces que cumplan a cabalidad con las normas éticas que rigen su comportamiento y que demandan la mayor diligencia y laboriosidad en el descargo de sus labores, empañamos la imagen de todos los jueces.

Quienes acuden a un tribunal a dirimir sus diferencias tienen derecho a que su proceso se resuelva en un plazo razonable, es decir, **toda persona tiene derecho a un proceso sin dilaciones indebidas**. La administración de la justicia tiene un carácter de servicio público que no debemos olvidar o soslayar. Por lo tanto, tiene que ofrecer respuestas con parámetros de máxima calidad, laboriosidad, transparencia, agilidad y en tiempo razonable.

Para resumir, conforme los hechos antes relatados el tiempo transcurrido en exceso –diez años– no encuentra justificación en ninguno de los criterios objetivos que hemos identificados para determinar la razonabilidad del plazo que tomó dictar sentencia. La prueba en este caso de que ello es así es robusta y convincente.

Antes bien, es menester, en Justicia a todas las partes involucradas, ser consciente de que ésta es la primera ocasión en que nos expresamos sobre las circunstancias bajo las cuales un juez puede incurrir en una violación ética por su tardanza en resolver un caso que tiene sometido ante su consideración y determinar los parámetros que nos llevan a hacer tal determinación. Por otro lado, la Jueza Pagani Padró lleva laborando en la Rama Judicial cerca de veinte años. La propia Administración de Tribunales reconoció la labor rendida por ésta durante estos años, así como "[s]u compromiso y dedicación [que se] refleja [en] el trabajo de calidad que ha realizado". Además, en la última evaluación de la Comisión de Evaluación Judicial ésta concluyó que la Jueza Pagani Padró estaba muy bien calificada, lo que la ubicaba "en un nivel 5 de ejecución, lo cual implica que sus ejecutorias sobrepasan por mucho lo esperado y contribuyen a proyectar un alto nivel de calidad". Por otro lado, ella ha reconocido que su tardanza fue excesiva y no constituye un ejemplo de cómo se deben tramitar los asuntos judiciales. Todo ello nos lleva a concluir que no adelanta los fines de la Justicia imponerle sanción alguna por lo que lo correcto es adoptar la norma expuesta de forma prospectiva.

Anabelle Rodríguez Rodríguez
Juez Asociada